Meier vs. Paulus.

Meier, Appellant, vs. Paulus, Respondent.

*November 4 — November 22, 1887.*

*(1, 2) Evidence: Deposition of party, when admissible: Error in excluding deposition, how cured: (3) Poor-laws: Duty of keeper of poorhouse: Negligence.*

1. The deposition of a party taken before the trial at the instance of an adverse party in the manner prescribed by sec. 4096, R. S., is admissible on the trial as original evidence against him, although he is present at the trial.

2. The error of refusing to permit such deposition to be read in the first instance, is not cured by the party being called by the adverse party and examined as a witness on the trial.

3. The keeper of a county poor-farm who receives a poor person into the poor-house and undertakes to care for him is liable for neglect to give him proper care, even though such person was brought to the poor-farm without proper authority and the keeper was not required by law to receive him or take care of him there.

APPEAL from the Circuit Court for *Marathon* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover damages for the neglect of the defendant in not properly watching and caring for the plaintiff, while he was in his charge, being then sick, and temporarily deranged from the effect of such sickness. The complaint alleges that the defendant, *Paulus*, was duly appointed to take the care and custody of the poor of Marathon county during the year 1883, and that he assumed the duties incident to his position in accordance with such appointment; that the county provided a dwelling-house near the city of Wausau for that purpose, and that defendant went into possession of such building, and had in his custody in said building a large number of the poor of said county; that on March 6, 1883, the plaintiff was at a public hotel in the city of Wausau, without money or means to care for himself; that the plaintiff became very sick of inflammation of the lungs or pneumonia, and was confined to his bed, and became delirious, and was unable to know what was being done with him; that while in that condition the officers of Marathon county were notified of plaintiff's condition, and came and took charge of the plaintiff, and caused him to be taken to the said county poorhouse, where they committed him to and left him in the care of the defendant, with directions to give him proper care, attention, food, and medicine; that the defendant accepted the charge and custody of the plaintiff; that when plaintiff was taken to said poor-house, and all the time he stayed there, he was very sick and helpless, had a high fever, and was in a delirious condition caused by said sickness, and was in great danger of injuring himself unless properly watched and cared for. The complaint further alleges that the defendant, in violation of his duty to care for and pro-

tect the plaintiff, and well knowing his delirious condition, carelessly, negligently, and wrongfully left the plaintiff in the night-time without proper care and attention to guard and protect him, and in consequence thereof the plaintiff, being then sick and delirious in consequence of such sickness, and not able to protect himself, left the said building in which he was placed by the said defendant, and wandered away for many miles, entirely unconscious of what he was doing, at a time when the snow was deep and the weather very cold, while the plaintiff was very thinly clad and without shoes upon his feet, and by reason thereof the plaintiff's feet were frozen so that it became necessary that a portion of each of them should be amputated. Damages for such injury are claimed.

The answer denies that, at the time alleged in the complaint, defendant was the agent of Marathon county for the care and custody of the poor of said county; admits that he was in possession of the county poor-farm in 1883, and alleges that he held possession under a lease from the county; denies upon information and belief that the plaintiff on the 8th of March, 1883, was sick with inflammation of the lungs or pneumonia; and alleges that on the contrary the plaintiff was a lunatic or insane person at that time, and for several weeks thereafter, and was in such condition as to require close confinement; denies upon information and belief that the plaintiff was taken in charge by any officer or agent of Marathon county, and taken to the poor-farm, and alleges that the plaintiff was taken to said poor-farm without authority from any officer or agent of said county. The answer further alleges that the poor of said county of Marathon were under the exclusive control and management of a committee of the county board of supervisors, and that admission could only be had to the poor-farm by persons who had received authority from some member of such committee; alleges that the plaintiff was brought to said

poor-farm in his absence, and that his wife, who was then in charge of the same, refused to receive him, and that, notwithstanding her refusal, the persons having him in charge carried him into the poor-house on said farm, and left him there. The answer further alleges that at the time no provision had been made by said county for the custody of insane persons at said poor-farm, and there was no room or place at such farm where an insane person could properly be cared for. The answer denies that the defendant ever received the plaintiff at said farm, or that he ever promised or agreed to give the plaintiff care or attention; and then alleges that although the plaintiff was at the poor-farm without authority, and, although he was under no obligation to give him care or attention, he did, during the time plaintiff remained at the farm, for about thirty-six hours, give the plaintiff such care and attention as he was able to give with the means and conveniences he had at hand; that he provided watches for him, guarded and protected him to the best of his ability, and was not negligent or careless in that respect; and that if the plaintiff met with any injuries it was without the fault or negligence of the defendant.

The foregoing are all the material allegations in the pleadings. The action was tried by the court and a jury. After the parties had produced their evidence on the trial, on motion of the defendant the court directed the plaintiff to be nonsuited, and from the judgment entered in favor of the defendant upon such nonsuit the plaintiff appeals to this court.

For the appellant there was a brief by *Neal Brown* and *L. A. Pradt*, and oral argument by *Mr. Brown*. To the point that the defendant, having undertaken to care for the plaintiff, was liable for negligence, even though he was not bound in the first instance to give such care, they cited *Butler v. M. & St. P. R. Co.* 28 Wis. 487; Shearm. & Redf.

on Neg. sec. 24; *Johnson v. C. & N. W. R. Co.* 49 Wis. 529; *Glavin v. R. I. Hospital*, 12 R. I. 411; 34 Am. Rep. 675. " The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it." *Coggs v. Bernard*, 1 Smith's Lead. Cas. 369; *Philadelphia & R. R. Co. v. Derby*, 14 How. 468; Wharton on Neg. secs. 640, 641. See, also, *Mersey Docks v. Gibbs*, 11 H. L. 686; *Foreman v. Canterbury*, L. R. 6 Q. B. 214; *Coe v. Wise*, 1 id. 711; *Winch v. Conservators*, L. R. 7 C. P. 458; *Clothier v. Webster*, 12 C. B. (N. S.), 790; Moak's Underhill on Torts, 28; *Phillips v. Comm.* 44 Pa. St. 197; *Lawyer v. Corse*, 17 Gratt. 230; *Clodfelter v. State*, 86 N. C. 51; *Robinson v. Chamberlain*, 34 N. Y. 389; *French v. Donaldson*, 57 id. 496.

For the respondent there was a brief by *Bardeen, Mylrea & Marchetti*, and oral argument by *Mr. Bardeen*.

TAYLOR, J. The appellant alleges as error, first, the refusal of the court to receive as evidence the deposition of the defendant taken before the trial in the manner prescribed by sec. 4096, R. S. There are also three errors alleged in the rejection of other evidence offered by plaintiff, and for receiving certain evidence on the part of the defendant. The fourth error assigned is that the court erred in directing the plaintiff to be nonsuited. We shall content ourselves with the consideration of the first and fourth errors assigned.

Was it error to refuse to permit the plaintiff to read to the jury the deposition of the defendant taken before the trial in the manner prescribed by sec. 4096, R. S.? It seems to us very clear that the very object of the statute giving a party the right to examine the opposite party, when such examination is made after issue joined in the action, was for the purpose of obtaining evidence in favor of the party seeking the examination and against the party examined.

In many cases the examination would render it wholly unnecessary for the party taking such examination to seek for evidence from the other witnesses to sustain his action or defense on the trial, and he would, therefore, not avail himself of such other testimony as he might produce were it not for the statements made by the party examined. If he can only use such examination as evidence against his opponent when such opponent absents himself from the trial of the action, then his right to use the examination depends upon the will of his opponent. The statute declares that this examination shall in all respects take the place of the old bill of discovery. The very object of the old bill of discovery was to procure evidence against the opposite party, to be used on the trial of an action; and it was never held that the answer of the party to the bill could not be used against him if he appeared at the trial of the action in aid of which it was taken, and was willing to submit himself to an examination in such action. The statute undoubtedly goes further than the bill of discovery, and not only allows an examination of the party as to those matters which the party seeking the examination cannot prove by other witnesses or testimony, but it allows an examination as to all the material issues in the action. This examination of a party at the instance of the opposite party is not strictly the deposition of a witness taken in an action, and its admissibility as evidence on the trial is not governed by the provisions of sec. 4089, R. S., which provides that "no deposition shall be used if it shall appear that the reason for taking it no longer exists, unless the party producing it shall show other sufficient causes, then existing, for its use." It is evident that the reasons for taking a deposition referred to in this section are the reasons given for taking the same specified in secs. 4101, 4110, R. S., and can have no reference to the taking of the examination of a party. His examination is taken because he is a party to the action,

and for no other reason, and that reason exists as much on the trial as at the time of taking it. The examination of a party is in the nature of an admission so far as his answers are material to the issues in the action, and such admissions are always admitted as original evidence against him. Sec. 4098 also treats the examination of the party as different from the deposition of a witness, by providing that the party calling for the examination of the party may, after making use of the examination on the trial, rebut the testimony of the party given in the examination, as though he were a hostile witness.

It is urged by the learned counsel of the respondent that, if it be admitted that the court was wrong in refusing to permit the reading of the examination of the defendant in the first instance, it was cured by the fact that the plaintiff called the party and examined him on the trial. We do not think this cured the error. The plaintiff knew the party was a hostile witness, and he did not wish to be compelled to put him on the stand to prove his case, when he had his sworn admissions, made at a time when perhaps he would be less liable to be swayed by the exigencies of the situation. He had the right to place before the jury in the first instance the statements of the defendant as made on his examination, and if the defendant desired to vary, color, or contradict them he should be compelled to do so as a witness on his own behalf, and not as the witness of the plaintiff.

Upon the merits of the case we are inclined to hold that the learned judge improperly took the case from the jury, upon all the evidence. It may be admitted that the plaintiff was brought to the poor-farm without any authority from the proper officers of the county, and that the defendant was not required by law to receive the plaintiff into the poor-house, or to take care of him there; still the fact remains that he did receive him into his house and did under-

take to take care of him.   There was evidence tending to
show that he knew of the nature of the plaintiff's disease;
he knew that he was not permanently insane or a lunatic;
he also knew that the effects of the disease under which he
was laboring rendered him for the time wholly incompe-
tent to take care of himself; he knew that in his delirium
he was inclined to leave the house and expose himself in
that way.   There was evidence that he knew that he had
left the house the first night he was in his custody, and the
evidence certainly tended to show that about 2 o'clock A. M.
on the second night he knew that the plaintiff had left the
house again, with nothing but stockings on his feet and
nothing but his shirt and pantaloons on his body.   He
knew the weather was very cold and the snow deep, and
that the probabilities of his being injured by his exposure
were very great; yet he made no attempt to rescue him from
this dangerous situation himself, nor did he request or direct
any person under his control to make any attempt to rescue
him.   We do not think that, as a matter of law, a court can
say that there was no evidence tending to show that the
defendant neglected his duty towards the plaintiff in his
unfortunate condition, and that he is neither legally nor
morally responsible for the consequence which resulted from
his exposure that night.   As we understand the evidence in
this case, the plaintiff does not seek to charge the defend-
ant for the negligence of his servants, or for the negligence
of the poor people under his care, but for his personal
neglect in not providing a more secure place for him, and
in not attempting to rescue him from the inclemency of the
weather when he knew the plaintiff had unconsciously ex-
posed himself to great danger therefrom.   The defendant,
having permitted the plaintiff to remain in his house, know-
ing his condition and his disposition in his delirious state to
expose himself to the dangers of the cold and snow in the
night-time, cannot divest himself of all responsibility for

AUGUST TERM, 1887.    173

his care and safety.   He cannot be grossly negligent of the
welfare of this unfortunate man, and hope to escape all
legal responsibility.   He might, perhaps, under the evidence
in the case, have refused to receive him into his house or
under his care, and when, as he says, he found that the
plaintiff had been placed in his house in his absence and
without his knowledge or consent, he might have refused to
take any responsibility in regard to him, and he might have
carried him back, and left him in the custody of those who
had brought him to his home.   This he did not do, but per-
mitted him to remain and undertook to care for him.   The
material question in the case was whether, after undertak-
ing such control and care of the plaintiff, he was guilty of
such neglect as resulted in an injury to the plaintiff.   Did
he give him such care and attention as a man of ordinary
prudence would have given under like circumstances?   If
he did not, he did not do his duty.   And whether he did or
not was, we think, clearly a question of fact for the jury,
and not of law for the court.   See Cooley on Torts, 630,
683, and cases cited in notes; also page 668.

*By the Court.*— The judgment of the circuit court is
reversed, and the cause remanded for a new trial.