## Johnson v. Langley.

(Decided Jan. 13, 1933.)

388

PETRIE & STANDARD for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Mrs. Olive Langley sued H. N. Johnson for libel, and recovered a judgment for $1,000, and the defendant has appealed.

During the school years 1926-27 and 1927-28, Mrs. Langley was employed as teacher in the McKinney common school district in Christian county. The McKinney district borders on the Todd county line. The school building was erected under an arrangement between the boards of education of Todd and Christian counties by which the cost of the building was paid by the Todd county board of education and by citizens of Todd county who resided near the Christian county line, and the Christian county board of education agreed to pay the expenses of operating the school, including the teacher's salary, for a period of ten years. During this period of time it was agreed that children residing in certain sections of Todd county should be permitted to attend the school.

Appellant and his two sons, who had six children of school age, resided in that section of Todd county included in this agreement. After Mrs. Langley had taught school in the McKinney district for two years and had been employed to teach it for the school year 1928-29, the appellant wrote the following letter addressed to the department of education at Frankfort, Ky.:

"Kirkmansville, Ky., June 23, 1929.
"Department of Education, Frankfort, Ky. I am writing you in regard to our school, the McKinney school, Christian County. It is a Todd Co. and Christian combined. Mr. Watson, the Todd Co. Supt. built the house and Mr. Peters the Christian Co. Supt. was to pay the teachers ten years for building the house. The teacher has taught in this district five years in all and never given satisfaction. The last two years she just set there and drawed her money. What a few children went to her did as they pleased. It isn't a decent place to send children. We got our papers and nearly all in the district signed against her. Mr. Watson said for us to put in a trustee and let him select the teacher. So we did that, elected a trustee and the Christian Co. Board and Supt. Peters ruled out all papers and gave her the school. She said she

would have it if it cost her half the school brought. She run Mr. Bone for trustee. He said he got $25 to make the race and $25 if he gave her the school. One of the men on the board said money was running things. Now we don't know what to do and asking you for advice and would like to know at once, for the board of education meets at Hopkinsville the first Monday in July; school begins the second Monday and we want another teacher. Her eyes are bad and she has no education and don't do her duty at school. If she teaches not many children are going. They will stay at home or go to some other school. That is what they did last year. I think the school house had just as well be locked up as to let her set there.

"Write at once and tell us what to do.

"Yours truly,

"H. N. Johnson Kirkmansville, Ky."

The letter was written at the home of appellant's son, Alvin Johnson, and by the latter's wife, Mrs. Annie Johnson, but was dictated by appellant. Alvin Johnson was present when the letter was written. The assistant superintendent of public instruction mailed copies of the letter to the school superintendents of Todd and Christian counties, and, when Mrs. Langley learned of its contents, she brought this suit for libel against H. N. Johnson, Alvin Johnson, and Mrs. Annie Johnson. At the conclusion of plaintiff's evidence the plaintiff dismissed the action as to Mrs. Annie Johnson, and the court, over plaintiff's objection, dismissed the action as to Alvin Johnson.

Prior to the institution of this suit, Mrs. Langley had taught school continuously for twenty-six years, mostly in Christian county, and had taught in the McKinney district five years. The great weight of the evidence shows that during all this time she was a competent teacher, and that her services were satisfactory to the patrons of the various school districts in which she taught and the board of education which employed her.

During the school year 1926-27 there was an epidemic of smallpox in Christian county, and the board of health of the county ordered that all children of

school age be vaccinated, and that they be prohibited from attending school until they had complied with the order. Mrs. Langley informed the children who were attending the McKinney school that they must comply with the order of the board of health. The parents of a number of children refused to comply with the order and withdrew their children from school. Among this number were appellant's two sons. Considerable dissatisfaction resulted, and it appears that appellant, his son Alvin, and other patrons of the school considered Mrs. Langley responsible for the condition to which they objected. During the school year 1927-28 the board of health of Christian county renewed its order of the preceding year directing that all children should be vaccinated before they should be permitted to attend school. In view of the dissatisfaction caused by her compliance with the order in the previous year, Mrs. Langley requested the health officer of the county to visit the McKinney school to make the announcement and to explain the order, which he did. However, appellant and the members of his family and probably a few other patrons took the position that Mrs. Langley was responsible for the order prohibiting children from attending school who had not been vaccinated. Appellant claimed that his grandchildren had had smallpox, and that therefore it was unnecessary for them to submit to vaccination, and that this fact was communicated to appellee, but it is fairly inferable from the record that she never received such a notice. Appellant's feeling toward appellee became very bitter, and he was active in fomenting opposition to her among the patrons of the school. On the trial of the case, he attempted to show that the libelous charges made in the letter addressed to the department of education were true, but in this effort he wholly failed.

A number of grounds are relied on for a reversal of the judgment. It is first insisted that the Todd circuit court is without jurisdiction, and that the plea in abatement and the demurrer to the petition as amended should have been sustained. This contention is based on the claim that section 74 of the Civil Code of Practice fixes the venue in actions for libel in the county where the plaintiff resides or the county where the libelous matter was published, and it is argued that, since Mrs. Langley resides in Christian county, and the

letter was received and read in Franklin county, the venue is limited to those counties.

Prior to 1906, section 74 of the Civil Code of Practice read:

"Every other action for an injury to the person * * * of the plaintiff, and every action for an injury to the character of the plaintiff, against a defendant residing in this State, must be brought in the county in which the defendant resides, or in which the injury is done."

Under this section of the Code before it was amended in 1906, the venue of actions for libel or slander was confined to the county in which the defendant resided and to the county in which the injury was done. Bright v. Hammond, 105 Ky. 761, 49 S. W. 773, 20 Ky. Law Rep. 1583. In Louisville Press Company v. Tennelly, 105 Ky. 365, 49 S. W. 15, 20 Ky. Law Rep. 1231, decided in 1899, it was held that an action for libel against a newspaper might be brought in any county where the paper circulated. In 1906 section 74 was amended by adding the following proviso:

"Provided, That in actions for libel, the action shall be brought in the county in which the plaintiff resides, at the time the publication was made, or in the county in which the newspaper or publication is printed or published, or in the county in which the transaction or act or declaration to which the publication relates, is stated or purported to have been done or taken place. When the home of the plaintiff and the place where the publication or newspaper is printed is the same, the plaintiff may institute suit in any county of this Commonwealth where the said publication is circulated." Acts of 1906, c. 100 p. 389.

In 1910 section 74 was amended and re-enacted. Acts 1910, c. 28, p. 85. The only change made by the 1910 act was to omit the concluding sentence of the proviso added by the 1906 act, to wit:

"When the home of the plaintiff and the place where the publication or newspaper is printed is the same, the plaintiff may institute suit in any county of this Commonwealth where the said publication is circulated."

It was clearly the purpose of the Legislature in enacting both of these amendments to afford relief to the publishers of newspapers, or similar publications, from being sued in any county in which the newspaper or publication might be circulated. Under the section as it now reads, an action for libel against a newspaper, or similar publication, must be brought in the county in which the plaintiff resides or in the county in which the newspaper or publication is printed or published, or in the county in which the transaction or act or declaration to which the publication relates is stated, or purported to have been done or taken place. It was not the purpose of the Legislature by these amendments to deprive the plaintiff of the right to bring an action for libel in the county in which the defendant resides. The amendments were intended to apply only to newspapers or other printed publications, and the word "published" was used in the sense of "printed" and not in the sense of the word "circulated." The context of the amendments clearly indicates that this was what the Legislature had in mind. The amendments did not change the existing law so far as matter not printed was concerned. An action for libel based on the libelous matter contained in a letter or other writing, not printed and circulated, as is a newspaper, may be brought in the county in which the defendant resides. As appellant resides in Todd county, the Todd circuit court has jurisdiction of the action.

Complaint is made of certain alleged incompetent evidence admitted over appellant's objection. Two witnesses. testified to statements made by Alvin Johnson which tended to show malice on his part. At the time the evidence was admitted he was a party to the action, and it was competent against him. The court properly admonished the jury that it was not to be considered as evidence against the other defendants. Mr. H. W. Peters, superintendent of schools of Christian county, testified that he received a letter from Mr. G. Young, assistant superintendent of public instruction, inclosing a copy of the letter written by appellant to the state department of education. He testified as to the matter contained in the copy of appellant's letter, and Mr. Young's letter to the witness was read to the jury. The testimony of H. G. Watson, superintendent of schools of Todd county, was of a similar nature. It is argued

that this evidence was hearsay and incompetent. The testimony as to the copy of appellant's letter was not prejudicial, since appellant admitted in an answer filed during the trial that he dictated the matter contained in the copy and mailed it to the department of educaion. The contents of the letter from Young to Peters was inconsequential, and could not have been prejudicial to appellant's substantial rights.

Before the trial, the depositions of appellant and his son, Alvin Johnson, were taken pursuant to section 606, subsec. 8 of the Civil Code of Practice, which provides that:

> "A party may be examined as if under cross-examination at the instance of the adverse party, either orally or by deposition as any other witness; but the party calling for such examination shall not be concluded thereby, but may rebut it by counter testimony."

On the trial plaintiff, over the objections of the defendants, read these depositions, although appellant and his son were present, and it is insisted that this was prejudicial error. The appellant and Alvin Johnson were parties to the action both when the depositions were taken and when they were read. They were later introduced as witnesses for the defendant, H. N. Johnson, and their testimony on the trial was substantially the same as their depositions.

> Section 554 of the Civil Code of Practice provides: "A deposition may be read upon the trial of an issue in any action, if, at the time of the trial the witness reside twenty miles or more from the place where the court sits in which the action is pending; or be absent from this State.

Section 558 provides that:

> "A party may take the deposition of any witness de bene esse, and it may be used under the circumstances prescribed in section 554."

The Code makes a distinction between taking the deposition of a witness and the examination of a party. The right to take the deposition of a witness before trial depends upon certain conditions specified in the Code, and the right is not absolute, but the right to take

the deposition of an adverse party, as if under cross-examination, is absolute under section 606, subsec. 8. The right to examine an adverse party is not dependent upon the existence of the conditions named in section 554, or their probable existence at the time of the trial, and there is no restriction in the Code on the use of his deposition on the trial if he is a competent witness, though he may be present. Appellant cites Dailey v. Lexington & Eastern Railway Company, 180 Ky. 668, 203 S. W. 569; Christian's Administratrix v. Ennis, 173 Ky. 101, 190 S. W. 675; Kentucky Utilities Company v. McCarty's Administrator, 169 Ky. 38, 183 S. W. 237; Willis v. Bank of Hardinsburg & Trust Company, 160 Ky. 808, 170 S. W. 188, as announcing a contrary rule.

In Dailey v. Lexington & Eastern Railway Company the witness whose deposition had been taken was not a party to the suit. In the Ennis Case the defendant refused to give his deposition before the trial, and it was held that, while section 606, subsec. 8, of the Civil Code of Practice, gives to a party the unrestricted right to take the deposition of the adverse party before trial, the refusal of the defendant to give his deposition was not ground for reversal, as the plaintiff went into trial without moving for a continuance for the purpose of taking the deposition. There are statements in the cases of Willis v. Bank of Hardinsburg & Trust Company and Kentucky Utilities Company v. McCarty's Administrator which might be construed to support appellant's contention, but these statements were unnecessary in the decision of the cases. The only question presented in the former case was the right of a party to take the deposition of an adverse party, and, in the latter case, the only question presented was whether the defendant waived its right to object to certain testimony of a party to the action because it had taken his deposition before the trial pursuant to section 606, subsec. 8.

In Louisville & Nashville Railroad Company v. Miller, 44 S. W. 119, 19 Ky. Law Rep. 1665, statements made by the plaintiff in his testimony on the first trial of the case were introduced in evidence by the defendant on the second trial, and it was held that testimony as to an admission made by plaintiff as a witness on a former trial is competent as substantive testimony, and that the trial court erred in instructing the jury that it

could be considered only for the purpose of contradicting plaintiff. Admissions against interest by a party to an action may always be introduced as substantive evidence. There is no reason why the declarations of a party made in a deposition taken by his adversary should not be read in evidence against him on the trial. The same declarations made at any other time or place and not under oath would be admissible.

In Meier v. Paulus, 70 Wis. 165, 35 N. W. 301, 303, the Supreme Court of Wisconsin, in construing a statute which permitted a party to take the deposition of an adverse party in an action, held that a deposition taken under such special statutory authority could be produced and used as evidence on the trial, even if the deponent were present in court. In the course of the opinion the court said:

> "His examination is taken because he is a party to the action, and for no other reason, and that reason exists as much on the trial as at the time of taking it. The examination of a party is in the nature of an admission so far as his answers are material to the issues in the action, and such admissions are always admitted as original evidence against him. Section 4098 also treats the examination of the party as different from the deposition of a witness, by providing that the party calling for the examination of the party may, after making use of the examination on the trial, rebut the testimony of the party given in the examination, as though he were a hostile witness. It is urged by the learned counsel of the respondent that, if it be admitted that the court was wrong in refusing to permit the reading of the examination of the defendant in the first instance, it was cured by the fact that the plaintiff called the party and examined him on the trial. We do not think this cured the error. The plaintiff knew the party was a hostile witness, and he did not wish to be compelled to put him on the stand to prove his case, when he had his sworn admissions, made at a time when perhaps he would be less liable to be swayed by the exigencies of the situation. He had the right to place before the jury, in the first instance, the statements of the defendant as made on his examination, and if the defendant desired to vary,

"color, or contradict them he should be compelled to do so as a witness in his own behalf, and not as the witness of the plaintiff."

We conclude that it was proper to admit the depositions in question.

The appellant admitted writing the letter and pleaded qualified privilege. The appellant resided in McKinney school district, had grandchildren who attended the school, and, when he wrote the letter in question to officials who had some control of and interest in the school, the letter was a communication for which an action for libel would not lie, unless appellant was actuated by malice. It being a communication sent upon a subject-matter in which both the sender and the recipient had a public interest, it was qualifiedly privileged if made in good faith without actual malice and with reasonable and probable grounds for believing it to be true. Tipton v. Rains, 228 Ky. 677, 15 S. W. (2d) 496; Commercial Tribune Publishing Company v. Haines, 228 Ky. 483, 15 S. W. (2d) 306; Thompson v. Bridges, 209 Ky. 710, 273 S. W. 529; Democrat Publishing Company v. Harvey, 181 Ky. 730, 205 S. W. 908.

In Bonham v. Dotson, 216 Ky. 660, 288 S. W. 297, 299, referring to the Bridges Case, the court said:

"In the Thompson v. Bridges Case, supra, we held that if a publication be qualifiedly privileged the plaintiff must then prove actual malice, but that such malice may be inferred from the falsity of the statements contained in the publication, and that if such malice be established, the shield of qualified privilege no longer protects the defendant."

The evidence satisfactorily shows that all the statements contained in the letter written by appellant to the department of education were false and were not made in good faith. They were based on idle rumors, and appellant admits that he made no effort to ascertain whether or not they were true.

Some complaint is made of the instructions, but we think they fairly presented the issues in the case. The jury was required to believe that the statements contained in the letter were false, and that in causing the letter to be written appellant was prompted by malice

toward the plaintiff before it could return a verdict against the defendant. The evidence was amply sufficient to sustain the verdict.

Judgment is affirmed.