[No. 33619. Department One. April 4, 1957.]

WILLIAM D. YOUNG, *Individually and as Guardian ad Litem for Barbara Lee Young, a Minor, Respondent,* v. CHARLES LIDDINGTON, *Appellant.*[1]

[1]Reported in 309 P. (2d) 761.

*Gavin, Robinson & Kendrick* and *Sensney & Davis,* for appellant.

*Kennett, McCutcheon & Soderland* and *Charles T. Morbeck,* for respondent.

OTT, J.—This is a malpractice action. The complaint alleged that the defendant doctor negligently and erroneously diagnosed, and failed to treat properly, a child's illness, which negligence was the proximate cause of the injury and damage. From a judgment in favor of the plaintiff, the doctor has appealed.

In view of the questions involved in this appeal and the disposition which we make of them, it is not necessary for us to state the facts except in so far as such discussion is necessary to an understanding of the legal issues involved.

The first assignment of error relates to the reading of a part of the pretrial deposition of the appellant doctor, at the beginning of the respondent's case in chief. The pertinent parts of Rule of Pleading, Practice and Procedure 26 (d) (2) (4), upon which the respondent relies in support of the admission of the testimony, are as follows:

"(2) The deposition of a *party* . . . *may be used by an adverse party for any purpose.*

"(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts. . . ." (Italics ours.)

These subsections appear in Federal Rules of Civil Procedure. They were adopted by this court in 1951 and are before us for construction for the first time. The rule has

been interpreted by the Federal courts to permit the deposition of a party to be used by an *adverse party for any legal purpose.* See 4 Moore's Federal Practice (2d ed.) 1190, § 26.29. See, also, *Pfotzer v. Aqua Systems,* 162 F. (2d) 779 (1947); *Snodgrass v. Cohen,* 96 F. Supp. 292 (1951). State courts which have adopted a similar rule adhere to the same interpretation placed thereon by the Federal courts. *Newell v. Desmond,* 74 Cal. 46, 15 Pac. 369; *Johnston v. McDuffee,* 83 Cal. 30, 23 Pac. 214; *Ahern v. Superior Court,* 112 Cal. App. (2d) 27, 245 P. (2d) 568; *Johnson v. Langley,* 247 Ky. 387, 57 S. W. (2d) 21; *Meier v. Paulus,* 70 Wis. 165, 35 N. W. 301.

█ In the instant case, after the trial court ruled that portions of the deposition were admissible, the court required the respondent to read all other parts of the deposition which were relevant to those portions previously read to the jury, in accordance with subd. (4) above quoted.

The rule is plain and unambiguous. A majority of Federal and state courts hold that, under this rule, the deposition of a *party* may be used by an adverse party for any purpose. We are in accord with the views expressed in these opinions. We find no merit in appellant's first assignment of error.

Appellant's second assignment of error relates to the admission of exhibit No. 6. Exhibit No. 6 is a hospital record which was made at a time when the child had been taken to another hospital for treatment for epilepsy by another doctor, two years subsequent to the alleged injury to the child and after the malpractice action against the appellant doctor had been commenced. The portion of this subsequent hospital record which it is contended was erroneously admitted and read to the jury is as follows:

"2-11-55. NEUROLOGY CLINIC.

"The mother states the child has had one convulsive seizure since she was here last time. The mother states she has spells at night in addition to this but these are very mild seizures. The child is now 4 years of age and has suffered these seizures since she had diphtheria about 1½ years ago. She was very ill at that time and tracheotomy was done because of her difficulty in swallowing. The patient

has had weakness in her legs since that time and there is some question about whether or not this weakness is improving. The child was a normal, healthy child up until this illness.

"A typical convulsive seizure is ushered in by a scream and the next thing the mother knows the child becomes rigid all over and apparently her legs and arms are in a position of extension. Following this the child apparently goes into a clonic phase which may last many seconds and finally the child relaxes and is unconscious for a period of several minutes. The mother recalls no tongue biting. She does not recall the child frothing at the mouth. The mother does not recall that she turns particularly blue during this spell but does feel that the child's body does become quite cold. Upon thinking it over the mother changes her mind about the blueness and states than on at least 2 occasions the child has turned blue during a seizure. During the spell the child's eyes roll up and the pupils are noted to be wide. Loss of control of urination is quite frequent during a spell. The mother states the child has had at least an average of one a day of these spells since they began about 1½ years ago. The mother does not describe any other types of seizures as occurring. When it is suggested that the child might have petit mal seizures the mother denies any such seizures. Prior to the onset of a seizure, the child often complains that she is in pain and she will grab the front of her chest with her right hand just before the onset of a seizure.

"There is no family history of seizures. The two other children in the family, 7 and 5 years of age, are perfectly well.

"The child appears to be having a normal mental development. She plays well with other children. She seems to have a normal interest in picture books, in letters and in numbers and other things indicating a normal interest for a child of this age. The child is felt by the mother to have always had a poor appetite. She must be urged to eat. The child has a tendency to be thin and underweight and pale because of this lack of ability to eat normally. The mother has used no medication at home for these spells. The mother feels that the ½ grain of Phenobarbital given at bedtime on 1-24-55 has not in any way in particular altered the spells. The spell suffered yesterday is described as having been about as severe a grand mal seizure as the child has ever had. There is no history in the family of Rh abnormality. The child has no history of having been jaundiced at birth.

"Examination—the child is rather small and frail and delicate and pale appearing. Child is unusually cooperative. She allows all tests to be done without complaining and she also performs any acts requested without hesitation and without fear. The optic fundi appear normal. Extra ocular muscle movements are normal. Gross visual fields appear normal. Child's hearing appears equal bilaterally and appears normal.

"There appear to be no residuals of the bulbar palsy.

"The palate moves in the midline on saying ah. Tongue appears normal. Deep reflexes are somewhat diminished generally. This is especially true in the right leg. The ankle jerks are absent. The child has no pathological reflexes. The gait is slightly abnormal. She appears mildly ataxic. She walks with a rather waddling gait in which she appears to be hyperextended. She is able to run normally. She has a normal Romberg test.

"Diagnosis: Convulsive disorder secondary to residuals of encephalitis following diphtheria.

"The patient has had an EEG by Dr. Hale Haven and this EEG shows gross generalized abnormalities consistent with a convulsive disorder.

"The child will be switched from ½ gr. Phenobarbital daily to 3½ gr. Dilatin daily. The mother will be instructed that if the child does not respond to this therapy, that it be increased to 4½ gr. Dilatins capsules daily.

"The mother states it is a long trip from her home to Seattle and it is difficult to make this trip very often. She has other young children to care for. She states she has no physician in her local area. I have requested that she consult with Dr. Bruce Murphy, Kennewick, Wash. A copy of this child's record should be forwarded to Dr. Murphy at this time. If Dr. Murphy wishes to have us re-check the child in 6 months to one year and also offer other suggestions as far as treatment is concerned, he can do so. Parents to write if they wish an appt. Rx: Dilatin 30 mgm 1 t.iid. p.c. Dr. Wallace Lindahl, Neurologist."

The respondent contends that the record is admissible under the uniform business records act (RCW 5.44.110 [cf. Rem. Supp. 1947, § 1263-2]), which reads as follows:

"A record of an act, condition, or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of

business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

 The quoted statute creates an exception to the hearsay rule. The act was adopted for the purpose of avoiding the necessity of calling the numerous witnesses who may have had a part in the creation of such records. *Cantrill v. American Mail Line,* 42 Wn. (2d) 590, 257 P. (2d) 179 (1953). Such records are permitted in evidence to prove the truth and accuracy of accounts then present and contemporaneously recorded. They are the routine product of an efficient clerical system. Typical of such records are payrolls, accounts receivable, accounts payable, bills of lading, and so forth. Hospital records do not differ from any other kind of record kept in the regular course of business. Hospital records, to be admissible under this act, must be subject to the same tests as to content as are applied to other business records. *New York Life Ins. Co. v. Taylor,* 147 F. (2d) 297 (1944). The rule was not adopted to permit evidence of the recorder's opinion, upon which other persons qualified to make the same record might have differed. Nor was it intended to admit into evidence conclusions based upon speculation or conjecture. *New York Life Ins. Co. v. Taylor, supra.* See, also, McCormick on Evidence 609, § 290.

Exhibit No. 6 contains accounts related by the mother to the doctor, which were considered by the doctor and from which, together with his examination of the patient and a study of the results of an electro-encephalogram, the doctor concluded that the child had a *"Convulsive disorder secondary to residuals of encephalitis following diphtheria."*

 Here, the mother, after the malpractice suit had been commenced, sought the advice and skill of another physician to treat her child for epilepsy. Any opinions or conclusions that the doctor may have made from the history given by the mother and his examination of the patient related only to his treatment of epilepsy, and could not be admitted as any proof that the epilepsy which he was then treating was the result of diphtheria. Such a diagnosis or

conclusion could only be based upon speculation or conjecture. A business record is admissible only in so far as it represents a record of a contemporaneous act, condition or event.

■ The uniform business records act, as applied to this case, admits the record as evidence of the following: (1) The event (the fact that the child was brought to the doctor because of illness), (2) the condition (the doctor's present determination that the child was suffering from epilepsy), and (3) the act (the doctor's treatment of the illness). A diagnosis of epilepsy is a relevant part of the business record. However, a determination that the epilepsy was the result of diphtheria is a conclusion based upon speculation and conjecture, and does not constitute an "act, condition, or event," within the purview of this statute.

■ It was never intended that, under the guise of a business record, the exception to the hearsay rule would be extended so that the maker of a record could express, through the medium of the record itself, an opinion as to causation that he would not be permitted to express in open court, if he based his opinion solely upon the factual information which is shown in the report. As was said in *McGowan v. Los Angeles,* 100 Cal. App. (2d) 386, 392, 223 P. (2d) 862 (1950):

"The statute does not change the rules of competency or relevancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an *admissible* 'act, condition or event.' It does not make the record admissible when oral testimony of the same facts would be inadmissible."

Illustrative of the reasonableness of such a rule is the fact that exhibit No. 6 does not indicate that the recording doctor considered exhibit No. 1, which was the hospital record of Kadlec hospital in Richland, or that he consulted with any of the doctors who made that record. Would the doctor have concluded as he did concerning *causation* had he made such inquiry, or had he had the advantage of that report? Further, the exhibit does not indicate that the doctor was apprised of the fact that, subsequent to the original hos-

pitalization in Kadlec hospital, the child suffered an attack of measles. Would the doctor's conclusion have been the same had he had this information? Exhibit No. 6 indicates that the conclusion as to causation was a determination made without knowledge of all the material and important facts. The doctor would not have been permitted to express an opinion as to causation, as an expert witness, if he based his opinion solely upon the matters shown in the report. See *Berndt v. Department of Labor & Industries*, 44 Wn. (2d) 138, 265 P. (2d) 1037 (1954).

█ We hold that a medical opinion as to causation, which is not the result of an observed act, condition or event, cannot be established by a business record.

Respondent relies upon *Cantrill v. American Mail Line*, *supra*, in which we held that the uniform business records act

"... was passed by the legislature for the purpose (among others) of making evidence that would otherwise be hearsay competent evidence. ... It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation."

In the cited case, the court admitted the hospital record to establish a prior condition of an ulcer and weight loss. The record spoke of a physical condition then present. It did not contain an opinion as to causation, but depicted a present factual condition upon which any other qualified person would have made the same record. The question of admitting a record which contained an opinion of a doctor as to causation was not before the court. The case is not authority to sustain respondent's contention.

Respondent further contends that, assuming that the admission of the exhibit into evidence was error, it was not prejudicial error for the reason that, at the time of its admission, the court orally instructed the jury as to the limited purpose for which it was admitted, in the following language:

"I might state to the Jury Exhibit No. 6, which was admitted during your absence, is not offered or admitted or to be considered by you as proof going to the issue of whether or not the plaintiff, Barbara Lee Young, in fact, suffered from diphtheria during the month of April, 1953, nor is it admitted or offered as to the issue of the truth or falsity of the existence or non-existence of the symptoms or conditions detailed to the hospital staff by the child's mother, as contained in the document. The only purpose for which it is admitted and to be considered by you is evidence of the physical condition going to the plaintiff, Barbara Lee Young, as it existed on the date of the examination and such bearing as such may have on the causal relation between that condition and the disease of diphtheria, if you find under the evidence Barbara Lee Young suffered from diphtheria at the time in question, in April, 1953."

Immediately after the court so instructed the jury, counsel then read the entire exhibit to the jury, the objectionable portions of which have been heretofore quoted in this opinion.

Further, respondent contends that the error, if any, was cured by the court's instruction No. 13, which is as follows:

"With respect to Exhibit No. 6, you are instructed that such exhibit was not offered, nor admitted in evidence, nor to be considered by you as proof going to the issue of whether or not the minor plaintiff, Barbara Lee Young, in fact suffered from diphtheria during the month of April, 1953, nor as to the truth or falsity of the existence or non-existence of the symptoms or conditions related to the hospital staff by said minor's mother as contained in the document.

"The only purpose for which it was offered and admitted, and for which you may consider it, is as evidence bearing upon the issue of such plaintiff's physical condition as it existed at the time of the alleged examination, and for such bearing as it may have upon the issue of causal relation between that condition and the disease of diphtheria, if you find under the evidence such plaintiff was suffering from diphtheria in April, 1953."

In its oral and written instructions, the court specifically instructed the jury that the exhibit could be considered "for such bearing as it may have upon the issue of causal relation between that condition and the disease of diphtheria."

The jury was permitted to consider the opinion of the doctor, as shown in the exhibit, as evidence bearing "upon the issue of causal relation." The opinion of the doctor, as shown in exhibit No. 6, was not admissible to establish causal relationship, and to instruct the jury that it could be so used was prejudicial error.

We have considered the remaining assignments of error and find no merit in them.

The judgment is reversed, and the cause remanded with instructions to grant appellant's motion for a new trial.

SCHWELLENBACH, DONWORTH, and FOSTER, JJ., concur.

FINLEY, J., concurs in the result.

November 30, 1957. Petition for rehearing denied.

