KRANER, A MINOR, APPELLEE, *v.* COASTAL TANK LINES, INC., APPELLANT.

[Cite as Kraner v. Coastal Tank Lines (1970), 22 Ohio App. 2d 1.]

(No. 2150—Decided March 30, 1970.)

*Messrs. Graham & Graham* and *Mr. Thomas N. Bopeley,* for appellee.

*Messrs. Reese, Fitzgibbon & McNenny,* for appellant.

PUTMAN, J. This personal injury case went to the jury in January 1969 on the sole issue of damages. A $20,000 verdict was returned and judgment entered.

Plaintiff, appellee herein, claimed injury resulting from a collision March 10, 1960, between a tank truck operated by an employee of defendant, appellant herein, and a school bus in which the then 8-year-old plaintiff was a passenger.

In June 1960, plaintiff was referred to Dr. Martin F. Sayers, a neurosurgeon in Columbus, Ohio, whose June 1968 deposition went into evidence without objection. In it he testified, without objection, about three reports of one Dr. Parker on separate electroencephalogram (hereinafter called EEG) tests given by Dr. Parker on June 15, 1960, July 27, 1960, and November 16, 1966.

Two weeks before trial, at the request of plaintiff's counsel, one Dr. Oser examined plaintiff and referred her to the same Dr. Parker, who made another EEG test on December 26, 1968, and sent a written report of his opinion thereof to Dr. Oser, who testified as to its findings. Dr. Parker never testified.

Dr. Oser prescribed anti-convulsants for the epilepsy he diagnosed. His diagnosis of epilepsy went into evidence without objection.

The defendant assigns the following errors:

ASSIGNMENT OF ERROR No. 1.

The trial court erred in admitting hearsay testimony over the objection of defendant.

■ The trial court erred in allowing Dr. Beryl Oser to relate to the jury the history given him by the plaintiff and her mother at the time of his examination of her two weeks before the trial.

■ The trial court erred in admitting, over the objection of defendant, the testimony of Dr. Oser as to the remarks and conclusions of Dr. Parker on the electroencephalogram performed June 15, July 27, 1960, and November 16, 1966.

ASSIGNMENT OF ERROR No. 2.

The trial court erred in permitting Dr. Oser to answer the hypothetical question propounded by plaintiff's counsel.

ASSIGNMENT OF ERROR No. 3.

The jury awarded excessive damages which appeared

to have been given under the influence of passion or prejudice.

## I.

The first part of the first assignment of error is not well taken and is overruled.

The trial court struck substantial portions of the history given by Dr. Oser and told the jury to disregard it. This was not necessary, because the substance of the history had already been independently proved as follows:

Dr. Sayers testified that plaintiff had a blackout and an unconscious spell and that he treated her from 1960 through 1962 with anti-convulsants to prevent recurrences.

Plaintiff's father testified to a knot on plaintiff's head, as did her mother who said plaintiff came home crying, complaining her head and neck hurt her.

She had a knot on the back of her head. "She said she had hit it on something"; that she laid about the house for two weeks during which she was nauseous and vomited, and, after she went back to school, she had several seizures.

No prejudice could result from the testimony of Dr. Oser as to the history related to him because the substance of it had already been fully proved.

## II.

The second part of the first assignment of error is overruled. It limits its complaint to the testimony of Dr. Oser as to the remarks and conclusions of Dr. Parker on the first three EEGs. There can be no prejudice in this because, without objection, defendant permitted Dr. Sayers' deposition in evidence, in which he also commented upon the same three EEG reports and conclusions of Dr. Parker and said they were abnormal tracings. In other words, Dr. Sayers having been permitted, without objection, to refer to the reports and call the test results abnormal, Dr. Oser's testimony, which was to the same effect, could not be prejudicial.

## III.

We now turn to assignment of error No. 2 relating to a hypothetical question put to Dr. Oser. The assignment of error is not well taken and is overruled. It is significant

that prior to the asking of the hypothetical question Dr. Oser was permitted, without objection, to testify to his diagnosis of epilepsy based upon his physical examination and the history which was permitted to remain in the record. The hypothetical question was then used to elicit two opinions. The first went to permanency of the epilepsy already diagnosed, and the second to causation.

No case is cited, nor do we find any holding, or saying by *dictum*, that, once properly in evidence, reports of qualified doctors on EEG tests may not be included in hyothetical questions forming the basis for opinion evidence.

*Zelenka* v. *Industrial Commission*, 165 Ohio St. 587, does not require reversal of this case. It is the sole authority cited by defendant in support of this assignment of error.

The last sentence of *Zelenka*, at pages 594 and 595, reads:

"In the opinion of this court, under the law as supported by the authorities herein cited, the hospital records which were introduced in evidence in the instant case were not of such character as to furnish a basis of fact for expert medical opinion, in the absence of a hypothetical question particularly specifiying only such proved facts as could be a basis for an expert opinion."

Our case does not deal with a mass of hospital records but rather "a hyothetical question particularly specifying" findings of fact including reports of conditions observed by Dr. Parker in the EEG reports.

The weight of defendant's reliance upon *Zelenka* falls upon the *dictum* therein. The holding in *Zelenka* is not applicable to our facts. After having decided *Zelenka* on the basis that the text of the hypothetical question was so bad because of such a sweeping inclusion of a mass of hospital records that the jury could not know what facts the opinion was being based upon, the opinion goes on, by way of *obiter dictum*, to say, at page 594:

"Furthermore, it is well settled that the opinion of an expert witness cannot be predicated either in whole or in part upon the opinions, inferences and conclusions of

others, whether expert or lay witnesses. *Manufacturers Accident Indemnity Co.* v. *Dorgan,* 58 F. 945, 22 L. A. R., 620; *Barker* v. *S. A. Lewis Storage & Transfer Co.,* 79 Conn., 342, 65 A., 143, 118 Am. St. Rep., 141; *Mt. Royal Cab Co., Inc.,* v. *Dolan,* 168 Md., 633, 179 A., 54, 98 A. L. R. 1106; annotations, 82 A. L. R. 1489, and 98 A. L. R., 1110.''

EEG reports are statements of ''conditions'' and are regularly considered by competent doctors in diagnostic work respecting suspected epilepsy. Modern medical practice makes regular use of other scientific tests for the purpose of finding facts necessary in arriving at diagnoses. For example, the pathologist regularly communicates his findings on tissues in biopsy examinations during operations whereupon serious surgical decisions of life or death dimension are made while the patient lies open on the operating table.

These are not ''mere opinions of others.''

The key to the issue is the distinction between statements of observable conditions, findings of facts and those things which are ''mere opinion and speculation.''

In *Weis* v. *Weis,* 147 Ohio St. 416, 169 A. L. R. 668, admission into evidence of hospital records containing records of analysis of blood and urine was expressly approved in a case which declared the rule that only records of ''observable facts'' were proper.

There is no more ''mere opinion'' in an EEG report than in a report of urinalysis or blood analysis.

The heart of the problem is that the legal profession is being asked to adopt a rule of evidence which says in effect: ''that may be the way you doctors handle human lives but it is below the high standard of care we lawyers use in the trial of lawsuits.''

A proper analysis of all the cases shows that in every instance the rule of evidence in question is a limitation upon how lawyers may ask hypothetical questions, not upon how doctors may practice medicine.

Reading carefully the balance of the authorities cited as standing for the ''well settled'' rule barring opinions predicated on opinions of others referred to in the *Zelenka dictum,* we find the following:

The doctrine of *Manufacturers' Accident Indemnity Co.* v. *Dorgan,* 58 F. 945, 22 L. R. A. 620, is simply:

"A physician, merely from hearing testimony as to an autopsy by those who performed it, cannot be asked whether the autopsy was such as to enable a physician to state the cause of death with any degree of certainty."

The reason: the jury would not know exactly upon what facts it was based.

The doctrine of *Barker* v. *S. A. Lewis Storage & Transfer Co.,* 79 Conn. 342, 65 A. 143, 118 Am. St. Rep. 141, is (Am. St. Rep. headnotes):

"If it is proposed to interrogate a witness without including in the question all the facts upon which he is to give an opinion, the court may decline to permit him to so testify."

The doctrine of *Mt. Royal Cab Co., Inc.,* v. *Dolan,* 168 Md. 633, 179 A. 54, 98 A. L. R. 1106; annotations 82 A. L. R. 1489 and 98 A. L. R. 1110, is that a doctor who has never seen the patient may not testify that the patient is ill, in his opinion, based on all the testimony, where the testimony consists in part of the examination and opinions of other doctors as to the patient's illness.

This simply means that Dr. A cannot testify that "I did not see the patient but if Dr. B and Dr. C examined him and are of the opinion he is ill then in my opinion he is ill." See 98 A. L. R. at page 1112, citing *Pecos & N. T. R. Co.* v. *Coffman* (Tex. Civ. App.), 160 S. W. 145.

That is really what is meant by the rule prohibiting "opinion *predicated* upon the opinion of others."

Frequently cases are cited as holdings under that rule, which are simply holdings that the hypothetical question was improper because the jury could not tell what facts were relied upon to give the opinion validity.

A frequently appearing example is the case of *Estes* v. *Goodyear Tire & Rubber Co.* (Common Pleas), 60 Ohio Law Abs. 266, which dealt with an expert medical witness who had never seen the patient and who was asked (as in *Zelenka*) to assume the facts and opinions found in the medical records. The court said: "There is nothing to

show what the doctor did consider. Such a method of presenting a hypopthetical question is improper."

We find no error in the inclusion of EEG reports in a hypothesis used as a basis for an expert opinion.

The fact that scientific expertise is necessary to enable an observer to discover or detect certain facts or conditions by the use of scientific testing devices does not render the report of the results of such tests reciting the finding of those facts or observation of those conditions "mere opinion of others" within the meaning of the rule of evidence prohibiting opinions which are based upon the "opinions of others."

The EEG reports of June and July 1960 and November 1966, themselves, were in evidence without objection.

The fourth report of November 16, 1968, was properly shown to meet the requirements of Section 2317.40, Revised Code, which applies for reasons which follow.

In the case of *Weis* v. *Weis*, 147 Ohio St. 417, 169 A. L. R. 668, Judge Hart (who also wrote *Zelenka* v. *Industrial Commission*, 165 Ohio St. 587), speaking for the Ohio Supreme Court affirming a successful will contest case where hospital charts and records, including records of analysis of blood and urine, covering a twenty-five day period during which decedent wrote the contested will were admitted into evidence, refers to the case of *People* v. *Kohlmeyer*, 284 N. Y. 366, 31 N. E. 2d 490.

The *Kohlmeyer case* is at the nub of an excellent annotation in 66 A. L. R. 2d 536, on the subject "admissibility in civil action of electroencephalogram, electrocardiogram or other record made by instrument used in medical test, *or of report based upon such test*." (Emphasis added.)

The annotation states (page 545) that: "the court in *Mayole* v. *B. Crystal & Son, Inc.* (1943), 266 App. Div. 1008, 44 N. Y. S. 2d 441, said that it was prejudicial error to exclude the electroencephalogram and the records respecting it made in the regular course of business," citing the New York "business records" statute and *People* v. *Kohlmeyer*, 284 N Y. 366, 31 N. E. 2d 490.

We observe that the New York statute is similar to Section 2317.40, Revised Code:

The annotation continues:

"The notation in a hospital record that the patient, a child, had had an electroencephalogram which led the neurologist examing him to believe that he was suffering from epilepsy was seemingly held in *Young* v. *Liddington* (1957), 50 Wash. 2d, 78, 309 P. 2d 761, a malpractice action, to be admissible in evidence under the Uniform Business Records Act creating an exception to the hearsay rule. Noting that the rule under the statute was adopted for the purpose of avoiding the necessity of calling the numerous witnesses who may have had a part in the creation of such records, that business records are admitted to prove the truth and accuracy of accounts then present and contemporaneously recorded, and that hospital records do not differ from any other kind of record kept in the regular course of business, the court also said that a business record is admissible only in so far as it represents a record of a contemporaneous act, condition, or event, and that the doctor's present determination (based in part upon the results of the electroencephalogram) that the child was suffering from epilepsy was a 'condition' within the test of admissibility just stated."

We agree with the reasoning and analysis of the New York and Washington courts and also are bound by Section 2317.40, Revised Code, to construe our business records statute so as to make our law uniform with theirs.

We observe that Judge Hart wrote the opinion in both *Zelenka* and *Weis* and cited the New York *Kohlmeyer case* in the *Weis* opinion. Therefore, we feel warranted in regarding that as authority to consider such EEG reports to be statements of "conditions" or findings of fact as distinguished from the mere "opinions of others" prohibited from inclusion in hypothetical questions by the rule referred to in Judge Hart's *dictum* in *Zelenka*.

The Ohio Legislature has required us, by the last paragraph of Section 2317.40, Revised Code, to give effect to those opinions of courts of other states:

"This section shall be so interpreted and construed as to effectuate its general purpose to make the law of this state uniform with those states which enact similar legislation."

Therefore, to make the interpretation of our law uniform, two separate doctrines must be recognized. First, reports by qualified doctors on EEG reports are admissible under Section 2317.40, Revised Code, in civil cases in the exercise of sound discretion, and, secondly, they are "statements of conditions" properly includible, where relevant, in otherwise proper hypothetical questions seeking expert opinions.

To avoid future confusion, we state that we note the inapplicability of Section 2317.40, Revised Code, to criminal cases decided and discussed in *State* v. *Tims,* 9 Ohio St. 2d 136.

Defendant further claims that the inclusion in the hypothetical question of the fact that plaintiff was treated with anti-convulsant medication compels "the answerer of the hypothetical question to infer that Dr. Sayers concluded the plaintiff had epilepsy."

Whether that is true or not, it could not be prejudicial on this record because, before he was asked the hypothetical question (seeking his opinion on permanency and then on causation), Dr. Oser gave his diagnosis, without any objection, of epilepsy.

The hypothetical question in the case at bar was as brief and concise as the nature of the case permitted, specific so the jury knew what facts were being relied on, the hypotheses were amply supported by properly admitted evidence and there was no abuse of discretion in the ruling of the trial court permitting it to be answered.

## IV.

Moving on to the last assignment of error, we find that the amount of the verdict is not excessive but, on the contrary, rather modest, taking into consideration the evidence of injury and damage.

## V.

Taking into consideration the entire record, we cer-

tify that in our opinion substantial justice has been done the party complaining.

*Judgment affirmed.*

VAN NOSTRAN, P. J., concurs.
RUTHERFORD, J., dissents from the syllabus and the judgment.

RUTHERFORD, J., dissenting. I dissent from the syllabus, not upon the basis of whether it is a correct statement of law but because it is in no way relative to the facts of this case as disclosed by the record. Irrespective of any inference one might draw from the syllabus or from what might be stated in the majority opinion, the record clearly discloses, as disclosed by the index to the bill of exceptions and the bill itself, that only two exhibits were ever either offered or admitted into evidence, they being plaintiff's Exhibits 1 and 2, which are attached to the bill of exceptions and each of which is a photo showing the school bus and defendant's truck after the accident.

There was neither any electroencephalogram test, any doctor's report of such a test, nor any report or record of any kind, which was ever marked as an exhibit for purpose of identification, identified, or offered and admitted in evidence; and there was, therefore, nothing to render the provisions of Section 2317.40, Revised Code, applicable to the instant case.

Kathy Lynn Kraner, then eight years of age, was injured on May 10, 1960. After the accident, she had a knot on her head. She was taken, first, to the hospital and then back to school where she remained the rest of the day. After returning home she was taken to Dr. Stefanic, the family physician, and she missed one or two weeks of school. Three or four months later she was taken to Dr. Mogil who referred her to Dr. Sayers. Dr. Sayers first examined her on June 9, 1960, and first recommended medication to Dr. Mogil on July 25, 1960. While Kathy was a patient of Dr. Sayers, he ordered three electroencephalo-

grams made at the laboratory of Dr. Milton Parker in Columbus. The first was on June 15, 1960, the second on July 27, 1960, and the third on November 16, 1966. After each was made, Dr. Parker made a report to Dr. Sayers. Dr. Parker was not called as a witness, and neither the tests nor the reports of Dr. Parker were offered in evidence, but Dr. Sayers, as treating physician, without their admission into evidence, was permitted to testify as to findings and their significance to him as the treating neurological surgeon.

As of the date Dr. Sayers last saw Kathy, he testified as follows:

"Q. Doctor, what was the last date upon which you had occasion to see and examine Kathy?

"A. November 16, 1966.

"Q. And were there any significant findings made by you at that particular time?

"A. At that time she appeared to me to be entirely normal from the standpoint of physical examination.

"Q. Doctor, the remaining abnormality, as shown in the electroencephalogram in November of 1966 was which of the two?

"A. She had continued to have the sharp wave reaction which was seen throughout the entire tracing and was not focal any longer. She also continued to have three to five per second slowing activity, and Dr. Parker further described some additional changes which, in my opinion, do not constitute a definite change but rather are the result of her additional growth and maturity."

This cause came on for trial on January 2, 1969. Subsequent to her last visit to Dr. Sayers, on November 16, 1966, Kathy was not again seen by a physician until two weeks before trial, on December 17, 1968, when, at the request of her attorney, she saw Dr. Oser. Kathy's attorney already knew what the testimony of Dr. Sayers, her treating physician, would be, including his testimony as to her condition on November 16, 1966, for it was contained in Dr. Sayers' deposition which had been taken on June 6, 1968.

The evidence is insufficient to qualify Dr. Oser as other than an examining physician, the purpose of whose examination was his testifying as plaintiff's witness at the trial. The referral was by plaintiff's attorney. Dr. Oser never did prescribe treatment. He did testify as to what he would prescribe if asked to give treatment, but he was never asked. As shown in the record, Dr. Oser testified as follows:

"Q. When you make the statement that Kathy is going to be placed upon this treatment you are just assuming that they will come back to you after this trial is over. They haven't actually said they are going to come back to you to get this treatment?

"A. I always tell patients it is up to them whether they want to come back or not. She doesn't have to come back to me. There are thousands of other physicians that are capable of taking care of this. She should be placed upon this therapy and I told her mother that I would, if she wanted me to, but that is up to her whether she comes back to me or whether she doesn't come back to me."

The issue in this case is not one pertaining to the admission of records. The issue is one of whether an examining physician, as distinguished from a treating physician, may testify: first, as to the history given him by the person being examined; and, second, as to his findings made from records of tests and reports made by other physicians, which records and reports have not been offered and admitted in evidence.

Dr. Oser was permitted, over objection, to testify as to the history given him by Kathy Kraner. This was error. See *Pennsylvania Co.* v. *Files,* 65 Ohio St. 403, paragraph one of the syllabus which holds:

"Where one who has received a physical injury from the wrongful act of another, calls upon a physician, not for the purpose of receiving medical aid and treatment, but for the purpose of enabling the physician to testify, as an expert, in a pending, or proposed, suit, statements made by the party under such circumstances in regard to his condition, are not admissible in evidence: * * *."

The majority opinion takes the position that there can be no prejudicial error where history has first been testified to by a treating physician. But to hold that one not permitted to testify may so testify because someone else has been permitted to do so completely destroys the rule, and for a reason outside the test of admissibility.

Dr. Sayers, as treating physician, obtained three electroencephalogram tests and reports thereon from Dr. Parker. None of the tests or reports was offered or admitted into evidence, and Dr. Parker did not testify. After Kathy was referred to Dr. Oser by her attorney on December 17, 1968, he also obtained an electroencephalogram test and report from Dr. Parker, neither of which was offered or admitted in evidence.

Dr. Sayers, as treating physician, testified as to his findings from the three electroencephalogram tests and reports obtained from Dr. Parker.

Dr. Oser, an examining physician, without any of the electroencephalogram tests or reports being either offered or admitted in evidence, was permitted to give his interpretation of such reports and his findings made from them.

In *Cleveland Ry. Co.* v. *Merk,* 124 Ohio St. 596, the court held that testimony by an attending physician as to the nature of injury disclosed by X-ray examination, when admitted without the photographs being received in evidence, does not constitute reversible error. See paragraph two of the syllabus. However, at page 604 in the opinion, the court stated:

*"If this testimony had been given by an expert, not the attending physician, its admission would have constituted reversible error. * * *"* (Emphasis added.)

Under the decision of the Supreme Court of Ohio in *Zelenka* v. *Industrial Commission,* 165 Ohio St. 587, examining physicians, neither of whom had attended the decedent during his lifetime, were permitted to testify pertaining to X-ray photographs, reports and hospital records which had been admitted into evidence as exhibits, and the court held it to be the better practice to incorporate in a

hypothetical question the facts on which an expert witness is asked to give an opinion; provided, however, that an expert witness may be permitted to give an opinion based on evidence which has been admitted for consideration of the jury without a hypothetical statement of facts, where the evidence upon which the opinion is given is not voluminous, complicated or conflicting and the question is so framed that the jury will understand the exact facts upon which the witness bases his opinion.

That case, however, deals solely with testimony, reports and tests which have been admitted in evidence as exhibits and is in no respect authority for permitting an examining witness who was not an attending physician and has not administered treatment to express an opinion derived from tests and reports, whether in the form of an opinion given in answer to a hypothetical question or otherwise, based upon tests and reports which have not been admitted in evidence.

Examples of error in the admission of testimony of Dr. Oser appear in the bill of exceptions. Pertaining to tests and reports of Dr. Parker, which were not in evidence, Dr. Oser was permitted to testify:

"What this is saying in essence is that the rhythm of the discharges * * * the electrical and chemical discharges are abnormal. There is something wrong with the nervous system in the brain and it is what he calls the mal grand category, which means epilepsy."

As a part of a hypothetical question, he was then asked to take into consideration the most recent electroencephalogram, which electroencephalogram was never offered or admitted in evidence. Again, Dr. Oser was asked, based upon the electroencephalogram which has been most recently taken (but not offered or admitted in evidence), whether Kathy will have any seizures in the future and was permitted over objection to give an opinion.

I agree with the second paragraph of the syllabus that:

"When properly in evidence, such reports may be included in a hypothetical question used as a basis for opinion evidence."

However, when opinions of an examining physician are permitted to be based upon reports not first properly admitted in evidence, the other side is denied the right of cross-examination, and the admission of such testimony over objection is prejudicial error.

Testimony of Dr. Oser erroneously admitted may well have had a bearing upon the size of the verdict returned by the jury.

In the majority opinion, Judge Putman states: "The heart of the problem is that the legal profession is being asked to adopt a rule of evidence which says in effect: 'that may be the way you doctors handle human lives but it is below the high standard of care we lawyers use in the trial of lawsuits.' "

With all due respect for Judge Putman, I express my opinion that this statement is a misconception of existing standards of lawyers and doctors.

Dr. Sayers, as treating physician, did not act upon hearsay testimony or upon tests or reports not exhibited to him. He acted only upon his own examination and upon tests and reports obtained directly from Dr. Parker for his examination. Dr. Oser did not rely upon another doctor to obtain hearsay information and then relate it to him second hand but obtained a test and report directly from Dr. Parker, as well as the previous tests and reports of Dr. Parker.

In the case of Dr. Sayers, a treating physician, the lawyers are more liberal and have made an exception, which the doctors do not make, by permitting him to testify from tests and reports used for treatment, which were not admitted in evidence.

In case of an examining physician, the lawyers follow what I understand to be the position taken by doctors in all cases, i. e., not to rely on hearsay testimony but to obtain reports and tests directly from the doctors making them, which, as applicable to a lawsuit, is the equivalent of requiring that before such reports may be used they be properly admitted in evidence.

In my opinion, the admission, over objection, of testimony of Dr. Oser, an examining physician, of the history

given by Kathy and by her mother and of his opinion and findings made from tests and reports of other doctors, which tests and reports were not offered and admitted in evidence, was error prejudicial to the defendant.

For the reasons set forth, I would sustain assignments of error numbered 1 and 2, pertaining to the erroneous admission of evidence, reverse the judgment, and, since liability exists as a matter of law, would remand this cause for a new trial upon the issue of damages. Such reversal would render it unnecessary to rule on assignment of error number 3, pertaining to amount of the verdict.