DILLOW, APPELLANT, *v.* YOUNG, ADMR. OF THE BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLEES.

[Cite as Dillow v. Young, Admr., 3 Ohio App. 2d 110.]

(No. 7885—Decided July 27, 1965.)

*Mr. A. Millard Armstrong*, for appellant.

*Mr. William B. Saxbe*, attorney general, *Mr. Robert M. Duncan* and *Mr. Donald M. Colasurd*, for appellee James L. Young, Administrator.

*Messrs. Thompson, Meier & Wachtel*, for appellee Mercy Hospital.

DUFFEY, J. This is an appeal from a judgment of the Common Pleas Court of Franklin County entered upon a directed verdict at the close of plaintiff-appellant's case. The action is one to determine plaintiff's right to participate under the Workmen's Compensation Act.

The petition alleges that plaintiff was an employee of the appellee Mercy Hospital. The claim is that plaintiff inhaled noxious fumes from a disinfectant, and that this caused injury to her heart and lungs. The petition specifically alleges that the injury was an aggravation of a pre-existing condition of chronic pulmonary emphysema and congestive heart failure.

The principal issue in this appeal is the admissibility under Section 2317.40, Revised Code, of certain statements found in records of the appellee hospital. The general foundation for admissibility under the statute was properly laid, and no challenge was offered on that aspect, *i. e.*, identity, preparation and regular course of business. Appellees made specific objections to particular statements in the records. The trial court sustained objections to statements containing medical diagnoses on the ground that they were merely opinions and not statements of fact. Other statements were excluded as being merely "history" or as constituting "hearsay on hearsay."

Section 2317.40, Revised Code, provides:

"As used in this section 'business' includes every kind of

business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.

"This section shall be so interpreted and construed as to effectuate its general purpose to make the law of this state uniform with those states which enact similar legislation."

In addition to the requirements of a general foundation specified in the statute, certain other basic limitations on the operation of this statute have become well established. One of the most commonly referred to is the general proposition that the statute does not permit "hearsay on hearsay." This refers to the situation in which a statement contained in a record is itself hearsay. An affirmative way of stating the same point is the frequently seen proposition that statements in an authenticated record are admissible insofar as they contain "observable facts." See *Weis* v. *Weis* (1947), 147 Ohio St. 416. Cf. *Ronald* v. *Young, Admr.* (1963), 117 Ohio App. 362.

In the present case, appellees have relied on these general propositions and contend, in effect, that *only* statements of observable facts are admissible under Section 2317.40, Revised Code. It is contended that statements of opinion contained in a duly authenticated record are inadmissible because they are opinions and not observable facts. The argument as made draws no distinction between, on the one hand, opinions which are by persons who are not qualified or which are subject to other established grounds of objection, and, on the other hand, opinions which are by qualified experts as to matters which are a proper subject for opinion evidence.

In our opinion, appellees have confused several useful "rules of thumb" or general propositions used to test the application of the statute with the actual criteria of admissibility under the statute. The criteria under the statute are quite explicit. An otherwise duly authenticated record is admissible whenever "the sources of information, method, and time of

preparation were such as to justify its admission." Under this standard, records containing both "hearsay on hearsay" and opinion may be admissible under certain circumstances.

Even though the statute has removed the hearsay objection to the record itself, it is true that nothing in the statute purports to wipe out objection to the internal hearsay nature of a statement contained in the record. However, it does not follow that such internal hearsay, or "hearsay on hearsay," is thereby inadmissible. Whether such a statement is admissible depends on whether it falls within one of the exceptions to the hearsay rule. For example, a record of a hearsay statement which came within the *res gestae* principle, or constituted an admission of a party, etc., would be admissible. See *Schmitt* v. *Doehler Die Casting Co.* (1944), 143 Ohio St. 421. Cf. *Green* v. *City of Cleveland* (1948), 150 Ohio St. 441, paragraph two of the syllabus and the discussion in the dissenting opinion.

Likewise we think it clear that a record of an opinion by a qualified expert as to a matter upon which opinion evidence is proper is also admissible. The fundamental purpose of Section 2317.40, Revised Code, was to do away with the old "shopbook" rule, and with the archaic restrictions which that rule and other common law hearsay doctrines had created. Under the statute, there are two major requirements for admissibility. The first is that the record meet the criteria for the reliability of the *record* itself—criteria created by the statute in lieu of the "shopbook" law. These criteria are that the custodian or other qualified person testify as to identity, preparation, regular course of business, etc. If the record is shown to be reliable (*i. e.*, meets those statutory requirements), then any statement contained in the record is admissible if that statement falls within the general principles of the law of evidence. Any statement within a duly authenticated record is admissible where such statement would be admissible if testified to in open court by the person who made the record.

Accordingly we hold that a properly authenticated record of a medical diagnosis made by a qualified doctor may be admitted into evidence under Section 2317.40, Revised Code.

The admissibility of a proper record of a medical diagnosis is recognized by leading Ohio cases interpreting Section 2317.40, Revised Code. In *Weis* v. *Weis* (1947), 147 Ohio St. 416, the

court in discussing admissibility of medical records stated, at page 425:

"Such a hospital or physician's office record may properly include *case history, diagnosis by one qualified to make it*, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient. * * *" (Emphasis added.)

In the same opinion, the court listed with approval various types of records held admissible by other courts. Included in the list, at page 426, were "diagnosis of cerebral hemorrhage" and a "report to effect patient had ulcer, cronic prostatitis and seminal vesiculitis."

In *Green* v. *City of Cleveland* (1948), 150 Ohio St. 441, the court excluded a statement as to the cause of an accident, holding that this was not a record made within the business of a hospital. The court went on to point out, at page 444, that "it was the business of the hospital to diagnose plaintiff's condition * * *." In *Lewis* v. *Woodland* (1955), 101 Ohio App. 442, the court excluded an opinion on a medical matter because the record was not prepared by a qualified expert. However, it should be noted that in *Lewis*, at page 446, Judge Fess specifically listed as admissible the record of a "diagnosis by one qualified to make it * * *."

The case of *Carson* v. *Metropolitan Life Ins. Co.* (1951), 156 Ohio St. 104, is distinguishable. The court there held a coroner's death certificate which stated the cause of death as "suicide" was not admissible. However, that case dealt with three specific statutes, each of which by its terms limited the admissibility of the designated record to the "facts" contained in that record. Section 2317.40, Revised Code, was not discussed in the opinion, and that statute is *not* by its terms limited to a record of facts. Further, suicide was the ultimate issue in the case and, therefore, not ordinarily a proper subject for an expert opinion. The opinion also was expressed by a coroner who had not examined or treated the person and did not observe the death and, therefore, was not a qualified expert. On the latter aspect, compare the subsequent decision of the court in *Perry* v. *Industrial Commission* (1954), 160 Ohio St. 520,

which upheld the admissibility of a death certificate prepared by the attending physician.

By its express terms, Section 2317.40, Revised Code, is to be interpreted so as to make its operation uniform with states having similar legislation. The leading case on the admissibility of a medical diagnosis contained in a hospital record is *Allen* v. *St. Louis Public Service Co.* (1956), 365 Mo. 677, 285 S. W. 2d 663, 55 A. L. R. 2d 1022. After a careful review of authority pertaining to business records, the court held, at page 683:

"* * * Since the hearsay objection is obviated, we see no reason why a proper expert medical opinion contained in a hospital record should not be accorded dignity equal to that of a similar opinion from the witness stand * * *."

Later, in the opinion (on page 683), the court observed that:

"* * * There was direct testimony that the doctor who wrote this entry was, at the time, a resident physician of the hospital; from this we may presume his qualifications. * * *"

In the present case, diagnosis was made by one Dr. Metzger, who was identified by direct testimony as a doctor on the staff of the hospital, and who had examined and treated the plaintiff. Additional authority may be found in *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 3 A. 2d 224; *D'Amato* v. *Johnston* (1953), 140 Conn. 54, 97 A. 2d 893, 38 A. L. R. 2d 772; *Reed* v. *Order of United Commercial Travelers of America* (1941), (C. C. A. 2, N. Y.), 123 F. 2d 252.

Of course, as the statute itself implies, and as the court in the *Allen case* pointed out, the trial court has some authority to admit or exclude where the sources of the record are dubious. However, we think it was error to exclude exhibit D-1. That exhibit was duly authenticated by the hospital record librarian as to all general requirements of the statute. The record is signed by P. S. Metzger, M. D. Both the librarian and other witnesses identified him as a staff doctor, and testified that he examined and treated the plaintiff upon her admission and later until her discharge. The record shows Dr. Metzger made an "Admitting Diagnosis" in his own handwriting of "Toxic Bronchial Irritation." His "Final Diagnosis" in his handwriting was:

"Chronic pulmonary Emphysema
acute Pneumonitis due to
poisoning of lung by chemical
(Garbo)"

Arguably, the identification of the agent or product "Garb-O" is inadmissible. However, as indicated in the *Weis case*, even that could be qualified on its face, at least, as case history. While of no substantive value on the issue of cause, its admission for a limited purpose would not have been error. Since there was also independent evidence of the use of "Garb-O," its admission could hardly have been prejudicial.

Exhibit D-2 is an "Emergency Report." It contains statement of the cause of injury prepared by a person identified as an "aide." The source of information is not shown. Its exclusion was, in our opinion, discretionary with the court. On the other hand, the court also excluded from that exhibit a report of "Physical Findings" and "Treatment." These include findings as to the plaintiff's physical condition, together with statements as to the cause of her injury, and information purportedly obtained from another institution (Children's Hospital Poison Control Center). The person who prepared this portion of the record was identified as an "extern," and was further identified as a "fourth year medical student." An extern is qualified to perform a medical examination and to report his findings. We consider it error to exclude that portion of the record which contained the extern's examination report. The other material was excludable in the discretion of the court.

Exhibit D-3 was signed by both an extern and Dr. Metzger. Again, the examination findings were admissible, although the history was excludable in the discretion of the court. Exhibits D-5 and D-6 contain a diagnosis by Dr. Metzger, and it was error to exclude that portion of the record.

The court excluded the hypothetical question to, and the answer of, the plaintiff's only medical witness. The question asked if there was an aggravation of a condition of chronic pulmonary emphysema. The court held that the question assumed a previous chronic condition, and that there was no evidence of it. Exhibits D-1, D-5 and D-6 were proper evidence

to show exactly that condition. We, therefore, find that the exclusion of those exhibits requires a reversal.

The court also excluded exhibit A, a form "C-3" of the Industrial Commission. The exhibit shows that it was executed by "Mercy Hospital, C. B. Beard—Supt." A witness identified Mr. Beard as a superintendent of appellee hospital at the time of the alleged injury and at the time of this record's preparation, and also identified the signature on the exhibit as that of Mr. Beard. The report shows plaintiff to be an employee of appellee hospital and states that she was injured on such appellee's premises on October 30, 1960. These were obviously relevant matters, particularly since the answer to the petition did not admit either employment or injury.

Exhibit A also contained the following statement:

"Claimant states—inhaled fumes from spray used in dish washing room—causing acute shortness of breath and apprehension."

In item 13 of the form, and just before Mr. Beard's signature, the following statement appears:

"By signing this report, I certify that I have authority to execute this Employer's Report and that the answers are true to the best of my knowledge and belief.

"The Employer certifies that this is a valid claim for payment of medical expenses only and waives notice of claim and order approving its payment from the Administrator of the Bureau of Workmen's Compensation as provided in R. C. 4123.512-513."

At the left of the signature, and in a special box outlined in heavy black lines, there is the following:

"SPECIAL NOTICE TO EMPLOYER

" If the validity of this claim is questioned by you, sign this application but cross out the last sentence of Item 13 and attach your reasons for denying the validity of the claim."

The admission of a party, of course, is competent evidence of relevant facts when offered by the adverse party. In our opinion, item 13, together with the special notice, is, prima facie, an acceptance or adoption of the statements contained on

the form. On its face, and in the absence of any further evidence, the exhibit should have been admitted. The second portion of exhibit B was admissible for the same reasons. Exhibit C is a can of "Garb-O." Whether or not it might have been admissible, the lack of any supporting evidence made its exclusion clearly nonprejudicial in any event. We do observe, however, that it is *not* essential to plaintiff's cause of action that she show the fumes she allegedly inhaled were noxious or harmful to other persons. She need only prove that she was injured. Whether others might be affected by the fumes is relevant only as it might tend to prove that plaintiff was in fact injured by breathing such fumes.

The judgment of the Common Pleas Court will be reversed and the cause remanded for a new trial.

*Judgment reversed.*

BRYANT, P. J., and TROOP, J., concur.