Dillow, Appellee, *v.* Young, Admr., Bureau of Workmen's Compensation, et al., Appellants.

(No. 39821—Decided June 15, 1966.)

*Mr. A. Millard Armstrong,* for appellee.

*Mr. William B. Saxbe,* attorney general, *Mr. Donald M. Colasurd* and *Mr. William M. Culbert,* for appellant Young, Administrator, Bureau of Workmen's Compensation.

*Messrs. Thompson, Meier & Wachtel* and *Mr. Harold C. Meier,* for appellant Mercy Hospital.

SCHNEIDER, J. We accepted jurisdiction of this appeal upon the suggestion that important questions of law could, and should, be determined involving the admissibility of that portion of hospital records containing (1) an expert opinion as to the external cause of injury, (2) a diagnosis by a fourth-year medical student serving as an extern, and (3) statements tending to show a physical condition pre-existing the inhalation of ''Garb-O,'' which, it is claimed, aggravated that condition. The opinion of the Court of Appeals (3 Ohio App. 2d 110) and the three paragraphs of its syllabus are devoted wholly to these questions. However, a majority of this court are of the opinion that this cause must be decided on another ground.

The gist of appellee's claim is aggravation of her pre-existing chronic pulmonary emphysema and permanent damage to her heart and lungs, not her four-day confinement and medical treatment during that time, for all of which she was compensated by the hospital. She admits that prior to the unfortunate occurrence in the course of her employment she had ''chronic pulmonary emphysema and congestive heart failure, which conditions were substantially aggravated and accelerated'' by the ''noxious and injurious fumes and gases'' which she inhaled. (Paragraphs four and five of her petition on appeal.)

The only medical testimony offered was that of a physician who had examined the appellee on but two occasions, once in 1962 and again in 1964, approximately one and a half and three

and three-quarters years, respectively, after the occurrence. There is no indication that these examinations were for treatment or for any other purpose than to assist the doctor to qualify as a medical expert on the patient's condition.

He testified that on both occasions "she appeared to be short of breath and she was breathing rapidly"; that "her breath sounds were roughened and her heart sounds were distant"; that he found "a decreased density of the lungs over the diaphragms which we speak of as emphysema"; that "emphysema is a stretching out of the lungs with the loss of the number of air sacs"; that his diagnosis of the patient's condition was "chronic pulmonary emphysema, chronic pulmonary fibrosis"; and that by "chronic" he meant "a condition that has been over a period of time, in contradistinction, something acute right now." He noted no change from the first to the second visits except "about three and a half pounds loss of weight."

The witness was then propounded a hypothetical question. To repeat it in its entirety here would not be useful, for the reason that its relevancy to the disposition of this case arises from that which it omits rather than from that which it contains. The question did not assume, nor was there any other testimony of, the probable cause or causes of emphysema or congestive heart failure. It did not assume that which was conceded: *that, at the time of the occurrence,* appellee already suffered from the same conditions found by the witness on two later occasions; nor did it call for an opinion as to aggravation of that condition, which was the gravamen of the claim to participate in the fund.

*Finally and most critically, it did not assume, nor was there any other evidence of, the character, composition or properties of the substance called "Garb-O," the injurious or noxious extent of those properties, or the degree of its concentration at the time of its inhalation by appellee.*

If the witness knew these facts of his own knowledge, that knowledge should have been revealed. If he did not know them, they should have been demonstrated and contained in the hypothesis. See *Burens* v. *Industrial Commission*, 162 Ohio St. 549, and cases next following.

The proffered opinion of the witness was:

"It is my opinion there is a direct causal relationship between the occurrence in question—that is, the inhalation of the fumes and the precipitation of the symptoms and disabilities engendered by the chronic emphysema and fibrosis present in this lady's chest. * * * It is my opinion that if this lady has had trouble with her chest *for a long period of time—how long it has been, I don't know, but at least several years before I first saw her,* indicating that she'd had some trouble with her chest before the occurrence in question, but that is why I said that precipitation of the symptoms or disabilities engendered by the disease underlying them [*sic*]." (Emphasis supplied.)

In view of the deficiencies already noted in the hypothetical question, the opinion in answer thereto is wholly gratuitous and without probative value. The trial court properly excluded it from the consideration of the jury.

This situation is not unlike that in *Stanley Co. of America* v. *Hercules Powder Co.* (1954), 16 N. J. 295, 108 A. 2d 616, 45 A. L. R. 2d 1106. Paragraphs one, two and four of the syllabus of that case reads as follows:

"1. To be admissible in evidence, experts' opinions must be based either upon facts, which are within their own knowledge, and which they detail to the jury, or upon hypothetical questions, which embrace facts supported by the evidence upon which expert opinion is sought.

"2. Expert opinion, which is so completely lacking in proper foundation that it is worthless, is not admissible.

"* * *

"4. In action against explosives manufacturer for damages allegedly sustained by plaintiff's theater building as result of explosions at manufacturer's plant, allowing asking of hypothetical question, which was put to plaintiff's expert witness who had not seen theater building, which did not detail type of construction and materials used in building, and which assumed, contrary to proof of series of smaller explosions, that thirty thousand pounds of nitroglycerin had exploded, was error."

See, also, *Williams* v. *Brown* (1876), 28 Ohio St. 547; *Dreher* v. *Order of United Commercial Travelers of America* (1921), 173 Wis. 173, 180 N. W. 815; *Berndt* v. *Department of Labor*

*and Industries of State* (1954), 44 Wash. 2d 138, 265 P. 2d 1037;
*Beam* v. *Kent* (1949), 3 N. J. 210, 69 A. 2d 569; *Mangione* v.
*Snead* (1937), 173 Md. 33, 195 A. 329; *Quimby* v. *Greenhawk*
(1934), 166 Md. 335, 171 A. 59; *Western Union Telegraph Co.*
v. *Morris* (1903), 67 Kan. 410, 73 P. 108; *DeDonato* v. *Wells,*
*Recr.* (1931), 328 Mo. 448, 41 S. W. 2d 184, 82 A. L. R. 1331,
and annotation.

Was there sufficient other probative evidence to have required the submission of the case to the jury? We think not. The various statements concerning condition, diagnosis and injury contained in the hospital records and the two workmen's compensation claim forms sought to be introduced, but excluded by the trial court, are, in chronological order:

1. Bureau of Workmen's Compensation form C-3—"Claimant states—inhaled fumes from spray used in dish washing room—causing acute shortness of breath and apprehension."

2. Bureau of Workmen's Compensation form C-1—"Inhaled fumes from spray used in dish washing room—causing acute shortness of breath and apprehension and affected heart."

3. Mercy Hospital records (Edna Dillow), cover sheet—"Admitting diagnosis: Toxic bronchial irritation.

"Final diagnosis *Chronic* pulmonary emphysema.

*Acute* pneumonitis due to poisoning of lung by chemical (Garb-O)." (Emphasis supplied.)

4. Same, emergency report—"Poison control center at Children's Hosp. consulted. This preparation is dangerous due to pulmonary toxicity, not oral."

5. Same, physical examination sheet—"pulmonary irritation due to toxic substance."

6. Same, consultation sheet—"Evaluation to date shows rather severe pulmonary emphysema."

7. Same, progress notes—"Exposed to disinfectant and noxious fumes *known to have some pulmonary effects* * * *." (Emphasis supplied.)

8. Same, discharge note—"Evaluation has shown rather marked emphysema. * * * Final diag. Chronic pulmonary emphysema * * *."

The words, "poisoning," "dangerous," "toxicity,"

"toxic," and the phrase, "noxious fumes known to have some pulmonary effects," merely invite further inquiry. Under what circumstances, to what extent and in what degree are the substances comprising "Garb-O" poisonous, dangerous, toxic, or noxious? What effects, if any, does a given concentration produce? What conditions does it aggravate? How long do they persist? The evidence supplies no answer to these questions.

Assuming then, without deciding, that these statements were admissible, they are not sufficient alone to sustain appellee's claim, and the trial court did not err in directing a verdict for appellants. Therefore, to decide the question of their admissibility is not only unnecessary but unwarranted.

We agree with the Court of Appeals that appellee did not need to show that "the fumes she allegedly inhaled were noxious or harmful to other persons." But she was required to prove that she was injured in the manner claimed. In this she failed. Paragraph two of the syllabus, *Gerich* v. *Republic Steel Corp.*, 153 Ohio St. 463; *Fox* v. *Industrial Commission*, 162 Ohio St. 569.

The judgment of the Court of Appeals is reversed, and final judgment for the appellants is ordered.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL and BROWN, JJ., concur.

HERBERT, J., dissents.