LAMBERT, Appellant,

v.

**GOODYEAR TIRE AND RUBBER COMPANY, Appellee.**

[Cite as *Lambert v. Goodyear Tire & Rubber Co.* (1992), 79 Ohio App.3d 15.]

Court of Appeals of Ohio,
Jackson County.

No. 647.

Decided March 26, 1992.

16

*Jerry L. Riseling,* for appellant.

*Bradley K. Sinnott,* for appellee.

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Jackson County Common Pleas Court granting a motion for a directed verdict in favor of Goodyear Tire and Rubber Company, defendant below and appellee herein, and against Donald J. Lambert, plaintiff below and appellant herein.

Appellant assigns the following errors:

First assignment of error:

"The court erred when it refused to admit into evidence the CT scan interpretation from Holzer Medical Center dated 6–5–86 (Exhibit '1') and the

CT scan interpretation from Holzer Medical Center dated 5–10–89 (Exhibit '2')."

Second assignment of error:

"The court erred when it refused to admit into evidence plaintiff's Exhibits '1' and '2', being the CT scan interpretation of Holzer Medical Center dated 6–5–86 and 5–10–89 after Dr. McCloud, an orthopedic surgeon, testified concerning the interpretation of those films consistent with the exhibits."

Third assignment of error:

"The court erred when it refused to permit the opinion testimony of Drs. Brown and Ward concerning the causal relationship of the plaintiff's industrial injury to the bulging disc at level L4–5."

Fourth assignment of error:

"The court erred when it directed a verdict for the defendant against the plaintiff."

On June 25, 1977, appellant injured his lower back during the course of his employment with appellee. Appellant prevailed in a workers' compensation claim for a lumbar strain suffered as a result of the incident.

In 1987, appellant moved the Industrial Commission of Ohio to allow an additional claim based on the 1977 incident. The additional claim involves a herniated disk between the third and fourth lumbar vertebrae and a diffuse bulging between the fourth and fifth lumbar vertebrae with disk degeneration.

At a May 29, 1990 jury trial, appellant attempted to prove the additional claim. Appellant testified about the June 25, 1977 injury, his limited physical abilities, and his visits to Dr. Richard M. Ward and Dr. John Q. Brown. Appellant further testified he underwent two CT scans.[1] The parties marked a June 5, 1986 CT scan report prepared by Dr. Stephen C. Johnson as Exhibit 1, and marked a May 10, 1989 CT scan report prepared by Dr. Manuel A. Casanova as Exhibit 2.

---

1. "CT scans" are defined in Taber's Cyclopedic Medical Dictionary (1985) 1744, as follows:
   "(1) TOMOGRAPHY. Any of several noninvasive special techniques of roentgenography designed to show detailed images of structures in a selected plane of tissue by blurring images of structures in all other planes.
   "(2) T[OMOGRAPHY]. COMPUTERIZED AXIAL. * * *
   "Tomography where transverse planes of tissue are swept by a pinpoint radiographic beam and a computerized analysis of the variance in absorption produces a precise reconstructed image of that area. This technique has a greater sensitivity in showing the relationship of structures than conventional radiography and has been used most successfully in diagnostic studies of the brain."

Although appellee stipulated to the authenticity of the CT scan reports, appellee objected to the reports on Evid.R. 803(6) grounds. The court sustained appellee's objections and commented as follows:

"Frankly, I don't think I would have a whole lot of trouble with the documents if I thought there was qualification satisfaction under *Hytha.*"

The court, referring to *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312, and *Quiller v. Mayfield* (Aug. 17, 1989), Franklin App. No. 88AP–11115, unreported, 1989 WL 95356, concluded that the CT scan reports could not be admitted into evidence unless appellant either (1) presented evidence regarding the qualifications of Drs. Johnson and Casanova to make the reports, or (2) brought Drs. Johnson and Casanova to the witness stand.

After the court disallowed the CT scan reports, appellant read portions of orthopedic surgeon Dr. Jerry McCloud's May 17, 1990 deposition into evidence. The parties stipulated that Dr. McCloud is an expert orthopedic surgeon. Dr. McCloud testified that although he does not feel as confident interpreting CT scans as he feels interpreting X–rays, he agrees the June 5, 1986 CT scan reveals a herniated disk and a diffuse bulging at L4–5, and the May 10, 1989 CT scan reveals a diffuse bulging at L4–5.

After Dr. McCloud's deposition testimony was read into evidence, appellant renewed his request to have the two CT scan reports admitted into evidence. When appellee asked how Dr. McCloud's testimony qualifies the two CT scan reports, appellant told the court that since Dr. McCloud's interpretation of the CT scans is consistent with the CT scan reports, the reports should be admitted into evidence. The court, citing *Hytha, supra,* and Evid.R. 803(6), refused to admit the reports. The court commented that the record contains no mention of the qualifications of Drs. Johnson and Casanova to issue the CT scan reports.

Appellant next sought to present by deposition the expert opinion testimony of orthopedic surgeons Dr. Richard M. Ward and Dr. John Q. Brown. Appellee objected on Evid.R. 703 grounds, asserting that Dr. Ward's and Dr. Brown's expert opinions were based in part on the inadmissible CT scan reports by Drs. Johnson and Casanova. Appellee noted that Drs. Ward and Brown did not review the actual CT scans. The court sustained appellee's Evid.R. 703 objection and disallowed the expert opinion testimony of Drs. Ward and Brown.

Appellee moved for a directed verdict based upon the absence of expert medical testimony establishing a causal relationship between the June 25, 1977 accident and the conditions alleged in appellant's complaint. The court granted the motion and dismissed the complaint.

I

■ In his first assignment of error, appellant asserts the court erred by refusing to admit into evidence the CT scan reports by Drs. Johnson and Casanova. Appellant questions whether the common law surrounding R.C. 2317.40, the statutory equivalent of the Evid.R. 803(6) business records hearsay rule exception, retains validity after the 1980 enactment of the Ohio Rules of Evidence. Appellant argues that since appellee stipulated to the authenticity of the two CT scan reports, and since Drs. Johnson and Casanova are presumed to be qualified to write the reports, the court erred by refusing to admit the reports into evidence.

Appellant relies on *Kraner v. Coastal Tank Lines, Inc.* (1970), 22 Ohio App.2d 1, 51 O.O.2d 7, 257 N.E.2d 750, reversed on limited grounds in (1971), 26 Ohio St.2d 59, 55 O.O.2d 68, 269 N.E.2d 43, where the court found an electroencephalogram test report was a statement of an observable condition rather than a "mere opinion and speculation." Appellant attempts to distinguish the case *sub judice* from both *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245, and *Quiller, supra,* by noting those cases did not involve hospital records, but rather involved diagnostic reports made by one doctor and found among the records of another doctor. Appellant emphasizes the fact that appellee stipulated to the authenticity of the CT scan reports made by Drs. Johnson and Casanova at Holzer Medical Center in Gallipolis, Ohio.

Appellee, in a footnote, asserts that the stipulation as to authenticity simply meant the CT scan reports "were found among the files at the Holzer Medical Center in Gallipolis, Ohio." Appellee argues *Quiller* is "squarely on point" and prohibits the admission of the CT scan reports into evidence. Appellee further argues the CT scan reports fail to meet the factors listed in the *Hytha* syllabus for admissibility of records of medical diagnoses.

We will begin our discussion under this assignment of error by examining how the business records exception to the hearsay rule applies to hospital records. Evid.R. 802, the hearsay rule, provides:

"Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

Evid.R. 801(C) defines "hearsay" as follows:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

Evid.R. 803 creates certain exceptions to the hearsay rule, including the business records exception contained in paragraph (6) of the rule:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(6) A memorandum, report, record, or data compilation, in any form, of *acts, events, or conditions*, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphasis added.) See, also, *McCormick v. Mirrored Image, Inc.* (1982), 7 Ohio App.3d 232, 7 OBR 294, 454 N.E.2d 1363. The statutory equivalent of the business records exception to the hearsay rule still remains in the Revised Code. R.C. 2317.40 provides in pertinent part:

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

Unlike the corresponding federal evidence rule,[2] neither Ohio Evid.R. 803(6) nor R.C. 2317.40 allows opinions and diagnoses found in business records to be

---

**2.** Fed.R.Evid. 803(6) provides:

"Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

admitted into evidence. The Staff Note to Evid.R. 803(6) hints that the omission of opinions and diagnoses from the Ohio rule indicates an intention to preserve pre-existing case law on the topic:

"The Ohio rule departs from the Federal Evidence Rule by deleting 'opinions and diagnoses' as admissible under this section. *It is not clear how far present Ohio law permits such evidence to be admitted.* In *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312, the Franklin County Court of Appeals set forth seven criteria for a diagnosis to be admissible when contained in a hospital record. *The Hytha case may retain validity* insofar as it may assist in determining the point at which, in medical records, an act, event or condition admissible under the exception becomes an impermissible opinion or diagnosis under the rule." (Emphasis added.)

Recently, in *Mastran v. Urichich* (1988), 37 Ohio St.3d 44, 523 N.E.2d 509, the court wrote that cases involving diagnoses and opinions in hospital records retain validity although they predate the Ohio Rules of Evidence. The *Mastran* court wrote:

"To be sure, these cases predated the adoption of the Rules of Evidence in 1980. However, Evid.R. 102 provides that the rules shall be construed to state the common law of Ohio unless the rules clearly indicate that a change is intended." *Id.* at 49, 523 N.E.2d at 509.

Consequently, our resolution of this case must include consideration of pre–1980 and post–1980 case law concerning application of the business records exception to hospital records.

In *Hytha*, the 1974 case whose validity was questioned by the Staff Note to Evid.R. 803(6), the Tenth District Court of Appeals wrote the following syllabus which listed seven factors the appellate court believed must be present before a trial court may admit a record of medical diagnosis:

"Before the record of a medical diagnosis made by a physician may be admitted into evidence, pursuant to R.C. 2317.40 (Records, as evidence), the following factors must be present:

"(1) The record must have been a systematic entry kept in the records of the hospital or physician and made in the regular course of business;

"(2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination;

"(3) The diagnosis must not have rested solely upon the subjective complaints of the patient;

"(4) The diagnosis must have been made by a qualified person;

"(5) The evidence sought to be introduced must be competent and relevant;

"(6) If the use of the record is for the purpose of proving the truth of the matter asserted at trial, it must be the product of the party seeking its admission;

"(7) It must be properly authenticated."

In the case *sub judice,* the court held that appellant failed to meet the *Hytha* syllabus factors as follows:

"COURT: * * * I've asked the seven *Hytha* questions. And I've got good answers as to five of those seven questions and I've got a semi answer to number two but I don't have any answer whatsoever to the diagnosis must have been made by a qualified person."

The court stated it was "semi-satisfied" with the fact the CT scan reports were "the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination," the second *Hytha* factor. The court, however, based its decision to exclude the evidence on the fourth *Hytha* factor—the absence of evidence that Drs. Johnson and Casanova, the authors of the CT scan reports, were qualified to write the reports.

For many reasons, we decline to strictly apply the *Hytha* syllabus to the case at bar. First, we note the *Hytha* syllabus is not included in the *Hytha* decision. Rather than restate the seven-factor rule contained in the *Hytha* syllabus, the *Hytha* decision reviews prior case law and then briefly reviews several fundamental principles of evidence law. When reviewing any Ohio appellate case where the syllabus differs from the decision, we must remember that the points of law are contained within the text of the opinion, not the syllabus.[3]

Second, we note the *Hytha* syllabus, and most of the *Hytha* decision, is *obiter dictum.* As Judge Whiteside discussed in his concurring opinion, the *Hytha* case concerned a report of one doctor found in the records of another doctor. Rather than engaging in a protracted discussion of the admissibility of medical diagnoses, the *Hytha* court could have limited its decision to the following sentences written by Judge Whiteside:

" * * * We are dealing here with 'diagnostic findings' of one doctor reported to and found among the records of another doctor. *Under such circum-*

---

**3.** Rule 2(F) of the Supreme Court Rules for the Reporting of Opinions provides:

"The syllabus of a Court of Appeals opinion shall not be considered the controlling statement of either the point or points of law decided, or law of the case, but rather as a summary for the convenience of the public and the Bar as a research and indexing aid. In a Court of Appeals opinion, the point or points of law decided in the case are contained within the text of the opinion, and are those necessarily arising from the facts of the specific case before the court for adjudication. * * *"

*stances, the report is not a business record of the receiving doctor within the purview of R.C. 2317.40."* (Emphasis added.) *Id.,* 40 Ohio App.2d at 489, 69 O.O.2d at 425, 320 N.E.2d at 320.

We agree with appellant's assertion that *Hytha* can be distinguished from the case *sub judice* because *Hytha,* at its core, involved a medical diagnosis made by one doctor and found among the records of a second doctor. In *Hytha,* the diagnosis was considered a business record of the physician making the report, not of the physician reviewing the report. See, also, *Hunt v. Mayfield* (1989), 65 Ohio App.3d 349, 583 N.E.2d 1349. In the instant case, the parties stipulated the CT scan reports were found among the files of the Holzer Medical Center, where they were created.

Third, we find the CT scan reports in the case *sub judice* are not medical diagnoses. The *Hytha* syllabus only applies to records of medical diagnoses. Although appellant, appellee, and the court below all assume the CT scan reports are "diagnoses" or "opinions" by Drs. Johnson and Casanova, we find the CT scan reports do not diagnose or opine, but rather report the factual findings of two CT scan analyses of appellant's body.

In *Kraner, supra,* the Fifth District Court of Appeals addressed an Evid.R. 703 issue of whether electroencephalogram reports can be the basis of expert opinions. The court noted that the utilization of scientific expertise does not change a fact into an opinion:

"The fact that scientific expertise is necessary to enable an observer to discover or detect certain facts or conditions by the use of scientific testing devices does not render the report of the results of such tests reciting the finding of those facts or observation of those conditions 'mere opinion of others' within the meaning of the rule of evidence prohibiting opinions which are based upon the 'opinions of others.'" 22 Ohio App.2d at 7, 51 O.O.2d at 10, 257 N.E.2d at 754.

Although appellee argues the creation of CT scan reports involved subjectivity, and thus a "diagnosis" or an "opinion," the record transmitted on appeal does not contain sufficient evidence to prove the CT scan reports are "opinions" or "diagnoses." The CT scan reports of Drs. Johnson and Casanova appear to contain only facts. The reports, each one-half page in length, recite findings from the CT scans and summarize the findings. The reports appear purely objective. Further, appellee presented no expert testimony concerning the nature of CT scans or CT scan reporting. Accordingly, we find the reports are not reports of "diagnoses" or "opinions," but rather are factual reports of analyses of appellant's body.

Since we have found the CT scan reports did not involve opinions and diagnoses, we need not address (1) whether Drs. Johnson and Casanova were

"qualified" to write any opinions and diagnoses in their reports; (2) who has the burden of proving the doctors' qualifications or the absence of their qualifications; and (3) whether the doctors' qualifications can be presumed from their employment by Holzer Medical Center. In this last regard, we note in *Dillow v. Young* (1965), 3 Ohio App.2d 110, 115, 32 O.O.2d 199, 202, 209 N.E.2d 623, 627, reversed on other grounds in (1966), 6 Ohio St.2d 221, 35 O.O.2d 401, 217 N.E.2d 868, the court presumed a doctor's qualifications for Evid.R. 803(6) purposes from the mere fact the doctor was employed by the hospital and had examined and treated the plaintiff.

We note the leading Ohio Supreme Court case on hospital records and the business records exception to the hearsay rule support the admission of the CT scan reports in the instant case. In *Weis v. Weis* (1947), 147 Ohio St. 416, 424, 34 O.O. 350, 72 N.E.2d 245, 250, the Ohio Supreme Court held hospital records are generally admissible into evidence, and specified that analyses of bodily tissues and fluids are admissible into evidence:

"Under this and similar statutes, by the great weight of authority, *those portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible,* in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, and insofar as relevant to the issues involved, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. * * *

"Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, *condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body* and the behavior of and complaints made by the patient. * * *" (Emphasis added.)

Recently, in *Blakeman v. Condorodis* (1991), 75 Ohio App.3d 393, 599 N.E.2d 776, the First District Court of Appeals decided a case similar to the case *sub judice*. In *Blakeman,* the plaintiff asked his expert medical witness if he had an opinion based upon his medical expertise and upon his review of various medical reports, including X-ray films. The defendant objected, arguing that the expert witness' opinion would be impermissibly based upon the expert opinions of others, including radiologists who wrote the X-ray film reports contained in the hospital records. The defendant further argued that the witness had not personally viewed the X-ray films. The court wrote:

" * * * A radiologist's enumeration of the contents of an x-ray is not, in this regard, mere medical hypothesis, but, rather, a learned statement of an observable condition falling under the definition of 'data' or organized information. *Such x-ray reports are relied upon regularly by treating physicians to aid in their diagnostic evaluation.* Calkins was, therefore, entitled to express an opinion on causation · in response to a hypothetical question which assumed the validity of the x-ray reports of record, just as any other expert would, under Evid.R. 703, be entitled to express an opinion in response to a hypothetical question which assumed the validity of 'data' of record.

"Moreover, the fact that Calkins did not personally view the x-rays goes to the weight and not to the admissibility of his expert opinion. See *Virag v. Allstate Ins. Co.* (Dec. 14, 1989), Cuyahoga App. No. 56391, unreported, 1989 WL 151291. * * * If the defense wished to make a collateral challenge to Calkins's opinion because of error in the radiologists' diagnoses and findings, it could have offered testimony or evidence from radiologists to contradict the x-ray readings of hyaline membrane disease." (Emphasis added.) *Id.* at 396, 599 N.E.2d at 778.

In footnote 2 to *Blakeman,* the court further wrote:

"Even had the parties not agreed to their admissibility, the plaintiff-appellant could have introduced the medical records, including the x-ray interpretations containing the radiologists' diagnoses and findings, under the business-record exception to the hearsay rule. * * * The justification for this application of the business records exception lies in the substantial guarantee of trustworthiness that attends the inherent need for accuracy in the preparation and use of medical records."

██ We note that in the instant case, the fact that appellant's expert witnesses did not personally perform the CT scans or view the CT scan films goes to the weight of the expert opinions, not the admissibility of the expert opinions. Further, appellee may offer testimony or evidence from radiologists to challenge or contradict the findings set forth in the CT scan reports.

We will now discuss *Quiller, supra,* the second case the trial court followed.[4] In *Quiller,* the court found that an unsigned copy of an X-ray report failed in three respects to meet evidentiary standards of admissibility. First, it was an unsigned copy. See *State ex rel. Brown v. Indus. Comm.* (1983), 13 Ohio App.3d 178, 13 OBR 213, 468 N.E.2d 777. Second, the proponent of the evidence failed to present any foundational testimony required by Evid.R. 803(6). In the case *sub judice,* by contrast, the parties

---

**4.** Judge Whiteside, who wrote the concise concurring opinion in *Hytha* in 1974, wrote the majority opinion in *Quiller* in 1989.

stipulated to the authenticity of the CT scan reports. On appeal, however, appellee contends the stipulation merely meant that the reports were "found among the files of the Holzer Medical Center." We disagree. Evid.R. 901(A) defines "authentication of evidence" as follows:

"The requirement of authentication or identification as a condition precedent to admissibility *is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.*" (Emphasis added.)

■ When appellee stipulated to the authenticity of the CT scan reports, appellee was agreeing that the reports "were what appellant claims them to be."

■ We readily acknowledge that Evid.R. 803(6), the business records exception to the hearsay rule, requires additional elements of authentication. The proponent of the evidence must show, or the parties must stipulate, that (1) the records were made at or near the time of the event, (2) the records were kept in the ordinary course of business, and (3) the records were made by a person with knowledge. We believe, however, that when a party desires to make an authenticity stipulation solely for Evid.R. 901 purposes and not for Evid.R. 803(6) purposes, the party must explicitly bring to the court's attention the limited nature of the stipulation.

In the case *sub judice,* appellee did not explicitly limit the authenticity stipulation to the Evid.R. 901 aspect of authenticity.[5] The parties and the court appeared to assume the authenticity stipulation went to both the Evid.R. 901 and the Evid.R. 803(6) aspects of authenticity. The debate at trial concerning the CT scan reports did not include any discussion of any aspect of authenticity. Instead, the debate focused, pursuant to *Hytha* and *Quiller,* on whether Drs. Johnson and Casanova were qualified to make medical diagnoses in CT scan reports. In *Toney v. Hickman* (Feb. 8, 1983), Stark App. No. CA–5959, unreported, 1983 WL 7356, the court wrote:

"The parties agreed at pretrial to the admission of the hospital records. That stipulation serves to bind the parties. Appellant will not now be heard to complain about proper authentication of the same records. See 50 Ohio Jurisprudence 2d, Stipulations, Sections 1–12."

---

**5.** During the trial below, the following exchange occurred:
"ATTORNEY RISELING: * * * As I understand, Mr. Sinnott will stipulate the authenticity of those reports and nothing further.
"ATTORNEY SINNOTT: The documents are what they purport to be.
"ATTORNEY RISELING: Which are reports from * * *
"ATTORNEY SINNOTT: They are not fabrications."

The third reason the *Quiller* court disallowed the unsigned copy of the X-ray report involved the court's determination, citing *Hytha*, that the report was in the form of an opinion. The court in *Quiller* noted that:

" * * * nothing in the record indicates the circumstances under which Dr. Chiu examined plaintiff, the facts Dr. Chiu used to arrive at his conclusion, or even the scope of the actual conclusion."

We disagree with this analysis. As we have discussed *supra,* the CT scan reports of Drs. Johnson and Casanova are not "opinions" or "diagnoses." We find the CT scan reports are factual reports of analyses of appellant's body. As the Fifth District explained in *Kraner, supra,* the fact that scientific expertise is necessary to enable an observer to decipher certain facts does not change those facts into "opinions" or "diagnoses."

In *Weis, supra,* the Ohio Supreme Court recognized the purpose behind the business records exception to the hearsay rule. The court wrote at 147 Ohio St. at 425, 34 O.O. at 354, 72 N.E.2d at 250:

"The purpose of Section 12102–23, General Code, is to liberalize and broaden the scope of the shop-book rule, recognized at common law as an exception to the general rule excluding hearsay evidence, and to permit the admission of records regularly kept in the course of business and incident thereto, *and, as applied to hospital records, to avoid the necessity and thereby the expense, inconvenience and sometimes the impossibility of calling as witnesses the attendants, nurses and physicians who have collaborated to make the hospital record of a patient.* * * *" (Emphasis added.)

In *Weis,* the court held that a record of the analysis of the blood and urine of a patient was admissible in evidence. In the case at bar, we hold that the records of the CT scan analyses of the bones and tissue of appellant are admissible in evidence.

■ We recognize, however, that the admission of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence cannot be reversed absent a showing of an abuse of that discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056; see, also, *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, at paragraph two of the syllabus; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. Further, Evid.R. 103(A) provides in pertinent part:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *[.]"

■ Thus, unless a ruling admitting or excluding evidence affects a substantial right of a party, the ruling cannot be reversed. *Birath v. Birath*

(1988), 53 Ohio App.3d 31, 558 N.E.2d 63.   In the case *sub judice,* we find that the trial court's ruling excluding the CT scan reports affects a substantial right of appellant.

Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error.

## II

In his second assignment of error, appellant asserts, in the alternative, that the court erred by refusing to admit the CT scan reports by Drs. Johnson and Casanova in evidence after hearing Dr. McCloud's interpretation of the CT scans.   Appellant argues that because Dr. McCloud viewed the CT scans and agreed with the CT scan reports by Drs. Johnson and Casanova, the court should have admitted the reports.

We find no merit to appellant's alternative argument.   Appellant cites no authority that provides if one witness agrees with a report, it is admissible in evidence.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III

In his third assignment of error, appellant asserts the court erred by refusing to permit the expert opinion testimony of Drs. Ward and Brown. Pursuant to Evid.R. 702, a witness who is qualified to testify as an expert by virtue of his knowledge, skill, experience, training, or education may testify to scientific, technical, or other specialized knowledge where such testimony will assist the trier of fact in understanding the evidence or determining a fact in issue.   The determination of whether an individual is qualified to give an expert opinion is within the discretion of the trial court and will not be reversed on appeal unless the trial court abused its discretion.   *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 59 O.O. 179, 131 N.E.2d 397;  and *Yoder v. Bernier* (1976), 49 Ohio App.2d 369, 3 O.O.3d 432, 361 N.E.2d 490.

Evid.R. 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

In *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, syllabus, the court strictly adhered to the rule:

"Pursuant to Evid.R. 703, facts or data upon which an expert bases an opinion must be those perceived by him or admitted in evidence at the hearing.

\* \* \*" See, also, *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317.

The *Jones* court rejected opinions of three experts who based their opinions in part on reports and medical histories not admitted in evidence and not prepared by the witnesses.

Ohio's Evid.R. 703 differs significantly from the federal rule. The federal rule provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."* (Emphasis added.)

The Ohio rule omits the second sentence of the federal rule. Where experts in a particular field reasonably rely on work performed by others, the federal rule permits the experts to base their opinions on that work without the necessity of having that work either admitted into evidence or personally perceived by the expert. Some Ohio courts have departed from *Jones* and from a literal reading of Evid.R. 703. See *Brant v. Benedict Ent., Inc.* (July 25, 1990), Hamilton App. Nos. C–890196 and C–890216, unreported, 1990 WL 103750; *Ratka v. Cleveland Bldrs. Supply Co.* (Aug. 10, 1989), Cuyahoga App. No. 55554, unreported; *State v. Jones* (Feb. 24, 1983), Franklin App. No. 82AP–130, unreported, 1983 WL 3372 (concurring opinion by Judge Strausbaugh). See, also, our discussion of the issue in *State v. Underwood* (1991), 73 Ohio App.3d 834, 598 N.E.2d 822.

The Ohio Supreme Court re-examined Evid.R. 703 in *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, and created a "major part" exception to the rule:

"Where an expert bases his opinion, in whole *or in major part,* on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." (Emphasis added.) *Id.* at the syllabus.

Justice Douglas wrote that although the court in *Jones* held that a medical opinion based upon reports not in evidence is inadmissible, the court in *Jones* did not discuss the precise issue facing the court in *Solomon.* In *Jones,* the experts did not personally interview the defendant. In *Solomon,* however, the two psychiatrists personally interviewed the defendant. The court held that since the psychiatrists based their expert opinions in whole or in major part on "their perceptions gained from their direct personal examinations of the plaintiff," their opinions are admissible notwithstanding the fact they

viewed inadmissible police reports, hospital records, and reports of other doctors.

In the case *sub judice,* Drs. Ward and Brown based their expert opinions in whole or in major part on direct personal examinations of appellant and on the CT scan reports by Drs. Johnson and Casanova. The examinations were "facts or data" perceived by Drs. Ward and Brown. Also, as we discussed under appellant's first assignment of error, the CT scan reports were properly admissible in evidence. Consequently, the court should have admitted the expert opinions of Drs. Ward and Brown.

Accordingly, based upon the foregoing reasons, we sustain appellant's third assignment of error.

## IV

In his fourth assignment of error, appellant asserts the court erred by granting appellee's motion for directed verdict. Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. If, however, all the evidence, when construed most strongly against the movant, permits only a finding against the other party, then the trial court must instruct a finding or direct a verdict against that party. *Helmick v. Republican–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464; and *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896.

A trial court considering a motion for directed verdict must determine not whether one version of the facts presented is more persuasive than another; rather, the trial court must determine whether the trier of fact could reach only one result under the theories of law presented in the complaint. *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 24 OBR 164, 493 N.E.2d 293. A motion for directed verdict tests the legal sufficiency of the evidence. *Id.* The trial court may not weigh the evidence or try the credibility of witnesses, but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence. *Id.* A directed verdict motion is made at trial and decided on the evidence that has

been admitted. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172. The "reasonable minds" test of Civ.R. 50(A)(4) requires the court to determine only whether there is any evidence of substantial probative value in support of the non-moving party's claim. *Id.* Thus, a motion for a directed verdict should be denied where the party against whom the motion is made has offered evidence tending to support all material issues necessary to constitute a prima facie case.

In the case *sub judice,* the trial court held, as we have discussed under appellant's previous assignments of error, that the CT scan reports were not admissible in evidence. The trial court further held that because the expert opinions were based upon the CT scan reports, the appellant's experts' opinions were not admissible in evidence. Appellee moved for a directed verdict based upon the absence of expert medical testimony establishing a causal relationship between the June 25, 1977 accident and the conditions alleged in the complaint. The trial court granted the motion and dismissed the complaint.

Based upon the reasons stated in our discussions of the preceding assignments of error, we sustain this assignment of error insofar as the trial court's judgment was entered on the basis of the inadmissibility of the CT scan reports and the absence of expert medical testimony.

*Judgment reversed
and cause remanded.*

GREY, J., concurs.

HARSHA, J., concurs in part and dissents in part.

HARSHA, Judge, concurring in part and dissenting in part.

I concur in the portion of the judgment and opinion overruling appellant's second assignment of error but respectfully dissent from the judgment and opinion sustaining appellant's first, second, and fourth assignments of error and reversing the directed verdict entered by the court below.

The dispositive issue in the case at bar concerns the common pleas court's refusal to admit into evidence the June 5, 1986 CT scan report of Stephen C. Johnson, M.D., and the May 10, 1989 CT scan report of Manuel A. Casanova, M.D. The court further excluded the deposition testimony of Richard M. Ward, M.D., and John Q. Brown, M.D., which assumed the two CT scan reports as evidence in order to render expert opinions that appellant's injuries were causally related to his prior employment.

Initially, I would note that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Combs* (1991), 62

Ohio St.3d 278, 284, 581 N.E.2d 1071, 1077 (trial court's refusal to admit a hospital report as a hearsay exception pursuant to Evid.R. 803[6] did not constitute reversible error); *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121, 573 N.E.2d 622, 623. The merits of appellant's contentions must be reviewed with this limited standard of review in mind.

Hearsay is generally not admissible except as otherwise provided by the Ohio Rules of Evidence. Evid.R. 802. Evid.R. 803(6) recognizes an exception to the hearsay rule for certain business records, which are defined as:

"[A] memorandum, report, record, or data compilation, in any form, *of acts, events, or conditions*, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." (Emphasis added.)

As noted in the majority opinion, Ohio explicitly chose to delete "opinions or diagnoses" from its version of the business records exception. One reasonable inference from the foregoing failure to explicitly include "opinions or diagnoses" in the Evid.R. 803(6) business records hearsay exception is that the Ohio Supreme Court expressly intended to exclude "opinions or diagnoses" from the ambit of the exception. In an analogous context, the maxim of statutory interpretation, *expressio unius est exclusio alterius* means that the expression of one thing is the exclusion of another. Black's Law Dictionary (6 Ed.1990) 581. Under this maxim, if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded. *Vincent v. Zanesville Civ. Serv. Comm.* (1990), 54 Ohio St.3d 30, 33, 560 N.E.2d 226, 229, at fn. 2. Here, the Supreme Court had the option of adopting the federal business records hearsay exception *in toto* but explicitly decided to delete "opinions or diagnoses." Accordingly, it must have intended their exclusion from Ohio's version of the business records hearsay exception. This conclusion is bolstered by the fact that the Supreme Court in *Weis, supra,* had previously allowed the admission of a "diagnosis by one qualified to make it." *Weis* was decided prior to the adoption of the Rules of Evidence and as such represented the common law.

Notwithstanding committee notes to the contrary, the omission of "opinions or diagnoses" from the rule mandates a change, both from the federal rule and prior Ohio law. See Evid.R. 102.

At any rate, the majority opinion holds that the CT scan reports contained only "facts" or "data" and not "opinions or diagnoses." However, the proffered evidence does not include a copy of the computerized tomography which Dr. Johnson and Dr. Casanova actually viewed in making their CT scan reports. Instead, the reports contain, following the title "IMPRESSION," their medical diagnoses of the abnormalities of appellant's back. In effect, these are their medical evaluations of the CT scans. As such, they include substantially more than facts or data which would not require a trained physician's evaluation. There is no indication that evaluation of a CT scan is necessarily as simplistic a process as, for example, taking a person's temperature by reading it from a thermometer. Indeed, Dr. McCloud testified as follows:

"[W]hen it comes to CT scans I do not feel as confident in looking at those as I do regular films. CT scans are simply computer ogmented [*sic*, augmented] types of films, but it takes a lot of practice to get good at reading them. I have not had a lot of practice at reading CT scans and I did look at them but was not adversely or favorably influenced by what I saw from them at all."

The foregoing testimony indicates that a CT scan report relies heavily upon the qualifications of the physician rendering it. This supports a finding that the physician's ultimate "IMPRESSION" in such a report is an opinion or diagnosis based not only upon the CT scan but also upon his training and qualifications, *i.e.*, this is something more than facts or data; it requires a subjective evaluation of data. Since Evid.R. 803(6) does not except opinions or diagnoses from the hearsay rule, the trial court did not abuse its discretion in excluding the CT scan reports and the expert opinion testimony based thereon.

Assuming, *arguendo*, that opinions or diagnoses are not *per se* excluded from the business records hearsay exception, in order to qualify under such exception, the diagnoses must have been made by a qualified person. See *Weis, supra;* Giannelli, Ohio Evidence Manual (1989) 49, Section 803.10(b); *Hytha, supra;* see, also, *Quiller, supra* (holding that the physician's opinion is admissible only where "the trial court, in its discretion, has found the statement to be based upon a professional conclusion arrived at after a proper examination of the observable facts, *by one qualified to make such an examination and render such an opinion,* and where the statement or opinion is relevant to the issue being tried." (Emphasis added.) In the case at bar, appellee, although stipulating to authentication, never waived its hearsay objection and the foundational prerequisites explicitly stated in

Evid.R. 803(6). There was no indication in the record as to either Dr. Johnson's or Dr. Casanova's qualifications. Based upon the foregoing, I am not persuaded that the trial court abused its discretion in excluding the CT scan reports and the expert opinions based on those reports. Accordingly, although I recognize that this is a close issue, I would overrule appellant's assignments of error and affirm the directed verdict entered by the court below.